685 So.2d 575 (1996)
Cynthia L. REEVES, et al.
v.
Westley Willie THOMPSON d/b/a Oasis Bar & Restaurant, et al.
No. 95-CA-0321.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1996.
*576 Christopher G. Young, Metairie, for Appellants.
Lloyd N. Shields, Daniel Lund, III, Shields, Mott, Lund & Burnside, L.L.P., New Orleans, for Appellee.
Before BARRY and LOBRANO, JJ., and JAMES C. GULOTTA, J. Pro Tem.
LOBRANO, Judge.
Westley Willie Thompson appeals a judgment which found him in contempt of court for violating a preliminary injunction. The injunction prohibited Thompson or his agents, servants or employees from playing any amplified music or other amplified sounds from his business premises to a level audible in the homes of plaintiffs, Cynthia L. Reeves and James G. Derbes.[1]
FACTS AND PROCEDURAL HISTORY:
Westley Willie Thompson, a supervisor of construction for the City of New Orleans, is the owner and operator of Club Oasis, a world beat night club located at 2285 Bayou Road.
Cynthia L. Reeves is the owner of The House on Bayou Road, a bed and breakfast historic home, located at 2275 Bayou Road.
Reeves received a permit to open the bed and breakfast sometime during December, 1992. Club Oasis had been operating since the summer of 1992.
On September 17, 1993, Reeves filed suit against Thompson seeking a temporary restraining order, a preliminary and permanent injunction as well as damages because of the operations of the Club Oasis. Specifically, Reeves alleged that Club Oasis engages in activities which draw a late night/early morning crowd. These activities include, among other things, amplified, recorded music, announced by a live disc jockey and played through powerful amplifiers and speakers. Reeves further alleged that the low frequency sounds emanating from the club are audible and pulsate through her home with "noxious persistence", producing physical discomfort, and impairing her sleep and that of her guests.
*577 On September 21, 1993, the trial court issued a temporary restraining order prohibiting Thompson or his agents, servants and employees from playing or allowing to be played from Club Oasis any amplified music or other amplified sounds to a level that is audible in Reeves' home.
A hearing on the preliminary injunction was set for September 28, 1993. After mutual consent, the hearing was continued numerous times.
On January 14, 1994, Reeves filed a contempt rule against Thompson alleging violations of the temporary restraining order. That hearing for contempt was set for February 4, 1994. However, by agreement of the parties, the hearing on the rule for contempt and the hearing on the preliminary injunction were both heard on March 4, 1994.
Following both hearings, the trial court entered judgment on March 4, 1994 denying the rule for contempt, but granting the preliminary injunction. No appeal was taken.
On August 31, 1994, Reeves filed a second rule for contempt. The rule was set for hearing on September 7, 1994. Following some confusion as to which section of Court would hear the rule, the hearing was reset to be heard on September 9, 1994 by the same trial judge who granted the preliminary injunction.
Following that hearing, the trial court found Thompson in contempt of court fining him $10,000.00 and awarding Reeves $4,125.00 in attorney fees and $3,000.00 in expert fees and costs.
Thompson appeals that judgment asserting the following assignments of error:
1) The district court erred in finding Thompson in contempt because Reeves failed to prove "willful disobedience", proving only a technical violations of the preliminary injunction.
2) The district court erred in awarding expert and attorney's fees for bringing the contempt action.
3) The district court erred in fining Thompson for alleged multiple violations of the preliminary injunction.
Because Thompson's first assignment of error questions the factual determinations of the trial judge, it is necessary for this court to review the trial testimony and evidence. In doing so, we are guided by the well established principles of appellate review. Manifest error and the clearly wrong standard are our guiding precepts. See, Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rossel v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
TESTIMONY ADDUCED AT THE HEARING:
The plaintiff, Cynthia Reeves, testified thatshe filed the rule for contempt because the amplified music from the Club Oasis could still be heard in her home even after the preliminary injunction.
She stated that the music can be heard until as late as 5:00 a.m. and that it is impossible for her and her guests to sleep. She testified that Mary Helmrich, a representative from Destination Management Service, told her that she could not recommend her historic bed and breakfast to tourists because of the noise from the bar. Reeves described the noise as affecting the side of the house where the bedrooms are located.
Reeves testified that she made numerous calls to defendant requesting that the amplification be turned down, but to no avail. She tried to explain to defendant many times that the amplification caused sound waves which could be felt inside the house even if defendant could not hear the sound outside the bar.[2] Reeves stated that even "white noise" radios placed in the rooms did not mask the problem.
In order to capture the phenomenon, Reeves hired Terry Koehn, a video production expert. In addition, she planted twentytwo ten foot trees to block the sound. However, she stated the trees did not help because *578 the problem emanated from low frequency sound waves.
Terry Koehn testified that he is in the business of video production, video capture and editing, video system installation and diagnostics. Koehn stated that he was hired by Reeves to capture the noise from the bar on tape. After inspecting Reeves' home and experiencing the noise, Koehn determined the kind of equipment he would need. He then returned and stayed overnight recording eight hours of tape. He then took the seven master tapes, edited the highlights and made one tape of the highlights.[3]
As the tape was played for the Court, Koehn testified that the bass sound travels through walls and bushes. Only concrete and thick steel can stop the sound waves. During the playing of the tape, an object behind the Judge's chair began to rattle. Koehn attributed this to "synthetic vibration". He described the bass patterns as constantly changing with the music. Because of the constant changing, a person is unable to get used to the noise.
Koehn testified that the noise on the tape began to diminish around 5:00 a.m. He stated that at breakfast the following morning he heard some of the guests complain about the noise.
Defendant, Westley Willie Thompson, testified that he is a contractor for the city working through the Mayor's office and that he owns and operates Club Oasis. Thompson took exception to the credibility of the tape. He described the kind of music heard on the tape as not the kind of music played at Club Oasis. He also stated the tape appeared to have been taken during the day.
Thompson denied that the bands on the tape were there at his request. He claimed he did not know where they came from.
He admitted Reeves complained several times since the granting of the preliminary injunction but stated he always turned the music down.
On cross examination, Thompson admitted his club plays dance hall reggae type music. Counsel for Reeves introduced an article in Upscale Magazine which describes dance hall reggae music as a mix of rap, funk and roots reggae played by drum machines.
Defendant's father, Willie Westley Thompson, testified that he helps his son in the bar and admitted being familiar with the preliminary injunction. After the injunction, he stated his son moved the speakers off the floor and closed the windows on Reeves' side of the building. He stated he has received phone calls from Reeves complaining about the noise and would always direct the volume to be turned down. He also stated that you cannot hear the music outside of the bar. Mr. Thompson testified that he has not personally received any complaints from Reeves since the issuance of the preliminary injunction.
Michael Prejean, a representative of the State Tourism Association, testified that he has been to Reeves' home since March, 1994 and stayed overnight at least four times. When he stayed and the Club Oasis was open, he experienced the loud music coming from the bar.
Prejean described Koehn's tape of the noise as a fair and accurate representation of the level of sound in Reeves' bedrooms.
Reynard Smith testified that he is a disc jockey and works for Thompson at Club Oasis. He stated he works from 10:00 p.m. to 4:00 a.m. He testified that whenever he was told to turn the music down, he did so.
Smith stated he was working the night Koehn's tape was made but took exception to it. He testified that the sound on the tape was too clear to be coming from inside the club and into Reeves' house. He opined that it sounded as if it had been recorded inside the club using a pocket recorder. He denied that any live bands played at the Club.
Perry Roach owns the property at 2285 Bayou Road and leases it to Thompson. He also questioned the credibility of the tape saying it appeared to be taken in daylight. His opinion was based on the background *579 sound of church bells in the area. However, on recall, Reeves testified that the bells came from a church one and one half blocks away which sounds the call to prayer at 6 a.m.
ASSIGNMENT OF ERROR 1:
Thompson asserts that Reeves failed to prove willful disobedience of the injunction, proving, at best, only a technical violation. He argues the trial judge erred in finding him in contempt.
Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes constructive contempt of court. C.C.P. art. 224(2). To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposely, without justifiable excuse. In making this determination, the Court is vested with great discretion. Kirby v. Kirby, 579 So.2d 508, 519 (La.App. 4th Cir.1991), writ den. 582 So.2d 1308 (La.1991); Estate of Graham v. Levy, 93-0636, (La.App. 1st Cir. 4/8/94), 636 So.2d 287, writ den. (La. 7/1/94), 639 So.2d 1167.
Thompson argues that his intention to obey the injunction is reflected by the efforts he took to muffle the sound, to wit: elevating the speakers off of the floor, adding sheetrock and carpeting, building a foyer, hiring a sound expert and purchasing a sound meter. Thompson also relies on the admitted fact that whenever Reeves called and complained, he lowered the volume. We disagree.
For the following reasons, we hold that the evidence supports the trial judge's finding of contempt. We find no clear error in her factual determinations, and thus no reason to disturb them.
The preliminary injunction of March 14, 1994, ordered Thompson "to refrain from playing amplified music at a level audible in the home of plaintiff." (emphasis added).
Reeves testified that when the volume was turned down, the problem disappeared. Both Thompson and his father also testified that whenever Reeves complained, the volume was turned down which eliminated the problem. If Reeves did not complain, then Thompson assumed she could not hear the music. All Thompson had to do to comply with the injunction was to keep the volume at a level at which Reeves could not hear the music. A simple enough solution but one which Thompson refused to utilize. Instead of instructing his disc jockey not to raise the volume above a certain level, Thompson's efforts were aimed at keeping the volume at the higher levels while attempting to prevent the sound from traveling. When these attempts failed to work and the sound was still audible by plaintiff, Thompson continued to allow the music to be played at the amplified level. Only when Reeves called and complained, did Thompson abide by the terms of the injunction and reduce the volume. The record clearly shows the trial court rejected Thompson's defenses regarding intent.
During the hearing, the Court emphatically responded, "Right, and if its' audible, it doesn't matter what he did. That's the problem." In her reasons for judgment, the Court stated, "The defendant's defense to the rule for contempt appears to be that the plaintiff failed to inform him or his agents that the music was too loud. In other words, the defendant believes that the plaintiff is obligated to inform him when the injunction is being violated. Wrong!"
Thus, given the evidence and testimony presented, we cannot find the trial court abused its great discretion in finding that Thompson willfully, intentionally and purposely violated the preliminary injunction by continuing to play amplified music audible in plaintiffs home.
This assignment of error is without merit.
ASSIGNMENT OF ERROR 2:
Thompson asserts the trial court erred by awarding attorney and expert fees.
Code of Civil Procedure Article 3611 provides:
Disobedience of or resistance to a temporary restraining order or preliminary or final injunction is punishable as a contempt of court. The court may cause to be undone or destroyed whatever may be done in violation of an injunction, and the person aggrieved thereby may recover the damages sustained as a result of the violation.
*580 Attorney fees are generally not recoverable unless provided by statute or contract. Huddleston v. Bossier Bank & Trust Co., 475 So.2d 1082 (La.1985); Tassin v. Golden Rule Ins. Co., 94-0362 (La.App. 1st Cir. 12/22/94), 649 So.2d 1050.
While Article 3611 allows the court to award damages to the aggrieved party, it does not specifically provide for the allowance of attorney's fees. No statutory provision provides for the allowance of attorney's fees in a contempt action. See, Kelly v. Terrebonne Parish Police Jury, 449 So.2d 568, 571 (La.App. 1st Cir.1984), writ den. 450 So.2d 959 (La.1984); Gwatney v. Miller, 386 So.2d 198, 199 (La.App. 3rd Cir.1980). The Court erred in awarding attorney's fees.
Louisiana Revised Statute 13:3666, the expert witness fee statute, vests the trial court with discretion in fixing such fees, and the trial court's discretion will not be disturbed on appellate review absent an abuse of discretion. Pitts v. Bailes, 551 So.2d 1363, 1380 (La.App. 3rd Cir.1989), writ den. 553 So.2d 860 (La.1989); writ den. 556 So.2d 1262 (La.1990); Larkins v. Cage Contractors, Inc., 580 So.2d 1068, 1070 (La.App. 4th Cir. 1991).[4]
The factors to be considered by the trial court in setting an expert witness fee include: (1) the time spent testifying at trial; (2) time spent in preparatory work at trial; (3) time spent away from regular duties while waiting to testify; (4) the extent and nature of the work performed; and, (5) the knowledge, attainments and skill of the expert. Additional considerations include the helpfulness of the expert's testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert and awards to experts in similar cases. Randolph v. General Motors Corporation, 93-1983 (La.App. 1st Cir.1994), 646 So.2d 1019, 1029, writ den. 95-0194, (La.3/17/95), 651 So.2d 276.
In the instant case, the issue addressed loud, disturbing music. Sound cannot be captured in photographs or testimony. Only by hearing the sound complained of could the court make a proper determination as to whether Thompson violated the preliminary injunction. The Court recognized the difficulty facing Reeves in proving her case without the tapes:
BY MR. YOUNG:
Your Honor, again, I'd just like to object to the introduction ...
BY THE COURT:
I'm going to overrule your objection. I mean, I think it's pretty clear what the claim is, that there was loud noise and it's in violation of this and I think you probably should be able to figure out that they might have some evidence other than Ms. Reeves' testimony
BY MR. SHIELDS:
Right, Your Honor.
BY THE COURT:
Because that's you know, to say well my client says it's not loud, my client says it is loud, and then I've got to decide if somebody is in contempt of court. You know, although Ihe hascertainly has the credentials, I don't think he's being offered here as an expert in how loud the sound is and that sort of thing. I'm going to have to judge myself, can you hear it or not *581 from what's shown on the video tape and quite frankly, I don't see that this too much different than hiring a detective to do a surveillance on a plaintiff [sic] plaintiff who saysa personal injury plaintiff who says that my back hurts and I can't do certain things.
BY MR. SHIELDS:
Your Honor, just for the record, we would invite the Court to visit the facility and stay all night long ...
BY MS. REEVES:
Absolutely.
BY MR. SHIELDS:
And this is the next best thing. Can we officially invite the Court to come stay at no charge
BY THE COURT:
Well, I appreciate that, but I'm not sure that's appropriate.
* * * * * *
BY THE COURT:
I'm going to allow it. Go ahead.
Koehn spent all night at Reeves' house and taped eight hours of music emanating from Club Oasis. He then edited the five raw tapes condensing the highlights of each tape onto one tape for the Court's convenience. In her reasons for judgment the Court stated, "The plaintiffs expert further enhanced the Court's understanding of how intrusive the noise from the Oasis Bar actually is."
Applying the factors to be considered in setting expert fees, we find that the amount of time spent obtaining and preparing the evidence coupled with the helpfulness to the court in rendering its decision, justifies the court's award of Koehn's $3,000.00 fee.
We find no abuse of discretion in the amount of expert fees.
ASSIGNMENT OF ERROR 3:
Thompson asserts the trial court erred by fining him more than the statutory maximum of $1,000.00. We agree.
Louisiana Code of Civil Procedure article 227 provides:
A person may not be adjudged guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law.
The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in R.S. 13:4611.
Louisiana Revised Statute 13:4611 provides:
Except as otherwise provided by law:
(1) The Supreme Court, the courts of appeal, the district courts family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
* * * * * *
(b) For disobeying or resisting a lawful restraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment of not more than twelve months, or both, except in juvenile courts and city courts, in which punishment may be a fine of not more than one thousand dollars or imprisonment for not more than six months, or both.
At the contempt hearing, Reeves testified to numerous instances of violation of the preliminary injunction between March 14, 1994 and August 31, 1994, the date the contempt motion was filed. Following the hearing, the court fined Thompson $10,000.00 for "the various violations". Furthermore, in her reasons for judgment the court found "The testimony of the plaintiff and her lay witness adequately conveyed to the Court the numerous times that the injunction was violated. The plaintiffs expert further enhanced the Court's understanding of how intrusive the noise from the Oasis Bar actually is. The defendant was fined accordingly." (emphasis added).
The trial court's actions can be interpreted in one of two ways. Either the Court found ten separate violations during the period of time in question or the Court imposed a hefty fine because of Thompson's blatant disregard of the injunction. Either way, the issue is whether the statute allows the Court to impose a fine greater than $1,000.00. Thompson argues that to do so, evades the statutorily imposed maximum penalty. In *582 support of his position, Thompson cites State v. King, 17 So. 288 (La.1895), the only authority cited by either party. We are unaware of any other cases which address this issue.
In King, our Supreme Court reversed a lower court decision which imposed an 80 day prison sentence on a saloon owner for 8 separate violations of an injunction pursuant to predecessor contempt laws.
The petitioner in King was enjoined from conducing a concert saloon. In violation of the injunction, he kept his saloon open. Eight rules were taken to punish him. Each rule was made absolute imposing a penalty of ten days imprisonment for a total of 80 days. The issue was whether it was competent for the lower court to sentence the petitioner on these eight rules, the sentences all pronounced at the same time. In reversing the trial court, our Supreme Court stated:
When the power of the court is invoked to punish for contempt for conducting a saloon contrary to the laws and the injunction of the court, it seems to me the court is called on to inflict the appropriate penalty, not to exceed the maximum of ten days. If it is competent to divide the offense of conducting a saloon in disregard of the law into parts corresponding with the number of nights the saloon has been opened, and thus authorize eight sentences of ten days each, pronounced at the same time, on eight different rules, there would be no potency in the law fixing the maximum penalty for contempt at ten days imprisonment.... The law means punishment for the offense at the outset, to prevent its repetition, and punishment afterwards for the repetition ... If the contempt is permitted to endure for a period of days or weeks or months, it does not seem consistent with the law to punish for that period of disobedience by as many sentences of ten days' imprisonment as there are days or weeks or hours in the period. If that were so, then, if the plaintiff ... had deferred his rules for even a month, the term of imprisonment would have been 300 days. No such theory of the power to punish for contempt can be admitted.... State v. King, supra. at 288.
Article 5, Section 2 of Louisiana's Constitution permits the statutory limitation of a court's contempt powers.[5] Considering the provisions of La.R.S. 13:4611 and applying the principles enunciated in King, we conclude that the law does not permit a Court to impose a penalty exceeding the maximum authorized by law at one time. As such, the Court was only authorized to impose a fine of $1,000.00. A contrary holding would allow a plaintiff to refrain from filing a contempt rule until the violations added up to an astronomical amount. That cannot be the intent of the law.
For the reasons assigned above we affirm the trial court's contempt and the award of expert fees. We reduce the fine imposed to $1,000.00. We reverse the award of attorney fees.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.
NOTES
[1] The original petition for Preliminary and Permanent Injunction and Temporary Restraining Order and for Damages was filed by Cynthia L. Reeves and James G. Derbes. The preliminary injunction was granted on behalf of Reeves and Derbes. However, the judgment appealed from arises from a Rule for Contempt filed solely by Cynthia L. Reeves.
[2] During the March 4, 1994 hearing, Reeves testified that the music is so loud it causes the house to become a drum, the walls to pound.
[3] All seven master tapes were introduced as evidence. Portions of the highlight tape, also introduced as evidence, was played for the trial court.
[4] LSA R.S. 13:3666 provides:

A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the costs of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.
* * * * * *
[5] Article 5, Section 2 provides in pertinent part: The power to punish for contempt of court shall be limited by law.