ROLAND L. BELSOME, Judge.
|2This Court has been asked to consider whether the deliberate and continuous violation of an April 18, 2006 consent judgment over a period of approximately three years should operate to disrupt a minor child’s education. For the reasons that follow, we affirm in part, reverse in part, vacate in part, and remand.
FACTS AND PROCEDURAL HISTORY
Dr. Juan Blanch, the father, and Erin Smith,[1] the mother, were married in 1999 and had one child during the marriage, M.B., in June of 2002. They divorced and entered into a Consent Judgment on April 18, 2006, allowing Ms. Smith to relocate to Picayune, Mississippi, with M.B. The judgment further provided that they would *560 share joint legal custody[2] of M.B., with Ms. Smith designated as the domiciliary parent. The judgment also designated a visitation schedule, including holidays, providing that Dr. Blanch would have visitation with M.B. overnight every Thursday, increasing over a period of two years until he had custody for ten out of every 28 days and overnight visitation of six nights per month; the judgment further provided that M.B. would spend Mardi Gras, Martin Luther King Day and Valentine’s Day with Dr. Blanch. The tax deduction for M.B. was assigned to Dr. |sBlanch.[3]
The Consent Judgment also provided that M.B. “shall attend pre-school and school in Slidell, Louisiana or Louisiana.” Pursuant to this judgment, Dr. Blanch enrolled M.B. in Our Lady of Lourdes School in Slidell, Louisiana for the 2007-2008 school year. It is not disputed that in July 2007, Ms. Smith unilaterally enrolled M.B. in Pearl River Lower Central Elementary School in Carriere, Mississippi for the 2007-2008 school year, in direct violation of the April 18, 2006 Consent Judgment.[4]
In October 2007, Dr. Blanch filed a Petition for Judicial Dissolution, in the alternative for Nullity, Objection to Relocation and for Return of Minor Child, to Modify Custody and Child Support. In December 2007, Ms. Smith filed Exceptions of Unauthorized Use of Summary Proceeding, Prematurity, and No Cause of Action.
On April 29, 2008, Dr. Blanch filed a Memorandum in Opposition to Ms. Smith’s Exceptions, as well as a Motion for Expedited Hearing on/and Motion for Judicial Dissolution, in the Alternative, for Nullity of Consent Judgment; Objection to Relocation and for Return of Minor Child; and Motion to Set/Modify Custody and Child Support, and a Motion for Contempt. Dr. Blanch sought to dissolve the April 18, 2006 Consent Judgment allowing Ms. Smith to relocate to Picayune, Mississippi with M.B., or alternatively, nullify that portion of the Consent Judgment, maintaining that the sole reason for his agreement for Ms. 14Smith to relocate to Mississippi was Ms. Smith’s agreement that M.B. would attend school in Slidell, Louisiana or Louisiana. Dr. Blanch asserted that the court should order M.B.’s return to Louisiana and designate him as the domiciliary parent; that the court should recalculate child support to include Ms. Smith’s income; and that the court should order Ms. Smith to pay attorney’s fees and costs incurred in the filing of the motions. In the Motion for Contempt, Dr. Blanch sought to have Ms. Smith found in contempt of court pursuant to La.Code Civ. Proc. art. 224 for violating the April 18, 2006 Consent Judgment.
In response, on May 6, 2008, Ms. Smith filed Exceptions of No Cause of Action, Res Judicata, and Prematurity.[5] Ms. *561 Smith asserted that relocation was granted by the Consent Judgment as well as the consent of the parties prior to the filing of divorce; that the Petition for Divorce indicated that Ms. Blanch was domiciled in Picayune, Mississippi; and that she and M.B. were living in Mississippi with Dr. Blanch’s knowledge and consent prior to any court action. Dr. Blanch filed an opposition to the each of the exceptions. On May 13, 2008, the matters were heard.
On May 20, 2008, Ms. Smith filed a Motion to Modify School in Which Child Attends, asserting that since the April 18, 2006 Consent Judgment, a material change in circumstances had occurred. Ms. Smith further asserted that the current judgment created a hardship on M.B. to attend a school forty-five minutes from her home, and that Dr. Blanch had obtained new employment which was located ten to fifteen minutes from M.B.’s residence and school in Mississippi. With regard to 15visitation, Ms. Smith maintained that the change in school would not adversely impact Dr. Blanch’s visitation with M.B. In June 2008, Ms. Smith filed a Motion to Continue the June 25, 2008 hearing date on her Motion to Modify School in Which Child Attends.
On July 1, 2008, the trial court issued a written judgment with regard to the May 13, 2008 hearing, denying Ms. Smith’s exceptions of unauthorized use of summary proceeding, prematurity, res judicata, vagueness, and no cause of action; the trial court deferred ruling on Ms. Smith’s exception of no cause of action with respect to Dr. Blanch’s motion to modify custody and support pending a ruling regarding dissolution or nullity of the April 18, 2006 Consent Judgment.[6]
On July 14, 2008, Ms. Smith filed a Motion to Recuse Judge Paulette R. Irons. The recusal was ultimately granted, and the matter was re-allotted to Judge Tiffany Gautier Chase.[7]
In July 2009, Dr. Blanch filed a Rule for Contempt, alleging that Ms. Smith violated the April 18, 2006 Consent Judgment by willfully refusing to allow M.B. to attend pre-school and school in Slidell, Louisiana or in Louisiana. Dr. Blanch further argued that Ms. Smith willfully failed to increase his visitation with M.B. pursuant to the Consent Judgment to a total of six nights per month, and also denied his visitation on Mardi Gras, Martin Luther King *562 Day, and Valentine’s Day |fiwith M.B. Dr. Blanch requested reasonable attorney’s fees and costs in connection with the filing.
The matter came for hearing on August 5, 2009, and on August 6, 2009, the trial court granted Dr. Blanch’s Rule for Contempt and issued written reasons for judgment. The court acknowledged that the commute from Picayune, Mississippi to Sli-dell, Louisiana was burdensome; however, the court noted that the proper recourse would have been to file a motion to amend the consent judgment. The court found Ms. Smith in contempt for failing to adhere to the consent judgment by unilaterally placing M.B. in school in Mississippi. In the judgment, the court explicitly ordered Ms. Smith to adhere to the April 18, 2006 Consent Judgment until there was a modification by the court. Ms. Smith was also assessed $500.00 in court costs and attorneys’ fees.
The trial court did not rule on Ms. Smith’s Motion to Modify School in Which Child Attends that had been filed on May 20, 2008. Ms. Smith continued to keep M.B. enrolled in the Mississippi school.
On August 11, 2009, Ms. Smith filed a Motion for New trial or Alternatively Motion for Clarification regarding the August 6, 2009 judgment, maintaining that to be found in contempt of court, a party must have purposefully and without justification violated a court order; while acknowledging that she failed to comply with the provision of the consent judgment regarding M.B.’s school, Ms. Smith argued that justification existed for her noncompliance, because the trip to Slidell, Louisiana was burdensome, and Dr. Blanch had new employment which was approximately ten minutes from the Mississippi public school. Furthermore, she argued that M.B.’s attendance at the Mississippi school did not adversely affect Dr. Blanch’s visitation and actually lessened his child support obligations. Ms. Smith 17also noted that she was currently employed as the school nurse at M.B.’s school.
Ms. Smith further argued that the trial court incorrectly awarded attorney’s fees to Dr. Blanch when granting his Rule for Contempt, as there was no statutory authorization to do so. Additionally, Ms. Smith maintained that based upon an indication from the trial court that the school and custody issues were being deferred until October 14, 2009, she re-set her Motion to Modify School for that date, and allowed M.B. to begin first grade at the Mississippi school.
The trial court denied Ms. Smith’s motion for new trial on August 19, 2009, reiterating that Ms. Smith was to adhere to the April 18, 2006 Consent Judgment until modified by a court order and specifically emphasized that the Consent Judgment provided that M.B. was to attend school in Slidell, Louisiana or Louisiana.[8]
On August 20, 2009, Dr. Blanch filed another Rule for Contempt pursuant to Ms. Smith’s re-enrollment of M.B. in school in Mississippi. On July 7, 8, and 15, 2010, the trial court heard Dr. Blanch’s Rule for Contempt and Motion to Modify Custody, as well as Ms. Smith’s pending Motion to Modify School. On July 15, 2010, Dr. Blanch made an oral motion for involuntary dismissal of Ms. Smith’s Motion to Modify School, which the trial court denied in open court.
On August 13, 2010, the trial court issued a judgment and reasons for judgment; however, the judgment erroneously referred to Ms. Smith’s Motion to Modify *563 School in Which Child Attends as a “Rule to Relocate.”[9] As a result, the trial court incorrectly applied the facts to La. R.S. 9:355.12, a statute governing factors for courts to consider in a contested relocation. In a detailed analysis, the |scourt listed the statute’s twelve factors and carefully considered how each applied to the parties and M.B., concluding that Ms. Smith met the statute s burden of establishing “good reason” for relocating M.B.[10] The trial court specifically noted, however, that it could not “ignore [the fact] that Ms. Smith has violated certain provisions of the Court’s April 18, 2006 consent judgment and the August 6, 2009 Judgment on the Rule for Contempt.”
The trial court further decreed that M.B. be permitted to attend school and extra-curricular activities in Picayune and/or Carriere, Mississippi; that in addition to the current visitation schedule of two weekends each month, Dr. Blanch was awarded one additional weekend every other month, totaling three weekends per m0nth, every other month; and that in addition to the current summer vacation , schedule, Dr. Blanch was awarded one additional week of ⅛⅛ M.B. each summer.[11]
Additionally, the court denied Dr. Blanch’s request to be designated as domiciliary parent, ordered that all other provi *564 sions of the April 18, 2006 Consent Judgment would remain unchanged unless the parties agreed otherwise, and reiterated that a failure to adhere to the August 13, 2010 judgment would result in the offending party being held in contempt of court. The court did not issue a ruling in connection with Dr. Blanch’s pending Rule for Contempt. It is from this judgment that Dr. Blanch appeals.
STANDARD OF REVIEW
[1,2] A reviewing court may not set aside a trial court’s finding of fact unless it is clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). However, if one or more legal errors interdict the fact-finding process, the appellate court should conduct a de novo review of the record. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735 (citing Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742, 747, rev’d in part, on other grounds, 96-3028 (La.7/1/97); 696 So.2d 569, reh’g denied, 96-3028 (La.9/19/97); 698 So.2d 1388). “A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial.” Evans v. Lungrin, 708 So.2d at 735 (citing Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993)).
DISCUSSION
In the first two assignments of error, Dr. Blanch asserts that the trial court | inerred as a matter of law in issuing its ruling pursuant to La. R.S. 9:355.12 when no such request was before the court; thus, our review should be de novo. Dr. Blanch also asserts that the trial court erred in failing to rule on his pending Rule for Contempt and in failing to find Ms. Smith in constructive contempt of court for violating the April 18, 2006 Consent Judgment and the August 6, 2009 judgment. We agree that the trial court erred as a matter of law in applying La. R.S. 9:355.12, and accordingly review the matter de novo. See Evans v. Lungrin, 708 So.2d at 735.
With regard to Dr. Blanch’s pending Rule for Contempt, we find that the trial court erred in failing to find Ms. Smith in contempt of court for the violation of the August 6, 2009 judgment.[12] The wording of that judgment, as well as the April 18, 2006 judgment, is explicitly clear, and it is undisputed that Ms. Smith directly violated both judgments. Ms. Smith plainly manipulated the court system, enrolling M.B. in school in Mississippi in the interim, even after the trial court’s admonishment and clear directive to adhere to the April 2006 Consent Judgment. Accordingly, we find that the trial court should have granted Dr. Blanch’s pending Rule for Contempt and assessed fines and attorney’s fees against Ms. Smith.[13]
“A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” La.Code Civ. Proc. art. 221. Contempt of court may either be direct or constructive. Id. A willful violation of a court order, such as the violation that occurred in this case, constitutes constructive contempt of court:
A constructive contempt of court is any contempt other than a direct | none.
Any of the following acts constitutes a constructive contempt of court:
* * ⅜
*565 (2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court.
La.Code Civ. Proc. art. 224(2).
Furthermore, this Court has recognized that a person who violates an order of the court intentionally, knowingly, and purposely may be found guilty of constructive contempt of court. HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1693, 96-1753, p. 19 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, 845, writ denied, 97-1353 (La.9/5/97), 700 So.2d 513; Reeves v. Thompson, 95-0321, p. 8 (La.App. 4 Cir. 12/11/96), 685 So.2d 575, 579. Likewise, “[w]illful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes ‘constructive contempt.’ ” McCorvey v. McCorvey, 2005-1173, p. 3 (La.App. 3 Cir. 4/5/06), 926 So.2d 114, 117.
“The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in [La.] R.S. 13:4611.” La.Code Civ. Proc. art. 227. That statute, entitled “Punishment for Contempt of Court,” provides, in pertinent part:
Except as otherwise provided for by law:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows: $ ⅜ ⅜ ⅜
(d) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
112La. R.S. 13:4611(l)(d) (emphasis added). Additionally, a fíne for contempt must be made payable not to a party, but to the court. In re Succession of Harrell, 2007-1533, p. 14 (La.App. 4 Cir. 10/1/08), 993 So.2d 354, 366 (citing City of Kenner v. Jumonville, 97-125, 97-210, 97-602 (La. App. 5 Cir. 8/27/97), 701 So.2d 223, 231). Fines for contempt must be payable to the court because such fines are “designed for vindication of the dignity of the court rather than for the benefit of a litigant.” Horrell, pp. 14-15, 993 So.2d at 366 (quoting Joseph v. Entergy, 05-0263, p. 8 (La.App. 4 Cir. 8/3/05), 918 So.2d 47, 52). Accordingly, pursuant to the limitations of La. R.S. 13:4611, we hereby order the trial court to impose a fine of $500.00 for Ms. Smith’s constructive contempt of court. See La.Code Civ. Proc. art. 2164 (providing that an appellate court “shall render any judgment which is just, legal, and proper upon the record on appeal”).
With regard to attorney’s fees, such fees “are generally not recoverable unless provided by statute or contract.” Reeves v. Thompson, 95-0321, p. 10 (La. App. 4 Cir. 12/11/96), 685 So.2d 575, 580. This Court has also recognized that “[n]o statutory provision provides for the allowance of attorney’s fees in a contempt action.” Id. Furthermore, La. R.S. 13:4611 does not specifically provide for the allowance of attorney’s fees. See id., see also Morris v. Morris, 04-676, p. 9 (La.App. 5 Cir. 11/30/04), 889 So.2d 1048, 1053, unit denied, 2004-3185 (La.3/11/05), 896 So.2d 68(holding that “[a]s a general rule, the power of a court to punish for contempt is limited to the imposition of incarceration and fines to be paid to the court”)(citing Sporl v. Sporl, 03-0364, p. 5 (La.App. 5th Cir.10/28/03) 860 So.2d 258, 261).
However, attorney’s fees are recoverable pursuant to La. R.S. 9:375, which 11sprovides as follows:
*566 A. When the court renders judgment in an action to make executory past-due payments under a spousal or child support award, or to make executory past-due installments under an award for contributions made by a spouse to the other spouse’s education or training, it shall, except for good cause shown, award attorney’s fees and costs to the prevailing party.
B. When the court renders judgment in an action to enforce child visitation rights it shall, except for good cause shown, award attorney’s fees and costs to the prevailing party.
La. R.S. 9:375. Dr. Blanch also asserts that the trial court should have found Ms. Smith in contempt pursuant to La. R.S. 9:346, which also provides for an award of attorney’s fees in certain circumstances.[14] Both statutes provide that attorney’s 114fees are available to the prevailing party. Notably, in Dr. Blanch’s August 20, 2009 Rule for Contempt, he argued that, inter alia, Ms. Smith willfully failed to increase his overnight visitation with M.B. pursuant to the consent judgment and requested *567 reasonable attorney’s fees and costs in connection with the filing.
Although we do not find that it is in the child’s best interest to alter custody or change M.B.’s school environment due to the length of time that has passed and other factors,[15] Ms. Smith’s decision to deliberately defy the carefully agreed-upon terms of the Consent Judgment has caused Dr. Blanch to incur years of court costs and attorney’s fees seeking review of Ms. Smith’s contempt. The record reveals that there were numerous court filings and hearings that failed to adequately address the contempt issue. Ultimately, although the trial court found Ms. Smith in contempt and ordered her to adhere to the original consent judgment, she yet again refused to do so. More time passed, and Dr. Blanch continued to incur additional costs and attorney’s fees associated with Ms. Smith’s contempt. Furthermore, the longer Ms. Smith remained in contempt, the stronger her argument for modification of school location for the best interest of the child became. Thus, even though Dr. Blanch does not prevail on appeal, this Court finds that it is fair and just to award costs and attorney’s fees accrued in connection with filing the Rule for Contempt. See La. C.C.P. art. 2164; La. R.S. 9:346.
The record before us, however, does not contain any evidence with regard to Dr. Blanch’s legal fees and expenses incurred in connection with filing the Rule for Contempt; therefore, the matter is remanded and the trial court is instructed to conduct a hearing within thirty (30) days of the date of this judgment to consider 1^evidence of attorney’s fees incurred by Dr. Blanch specifically with regard to the filing of the Rule for Contempt and to award same. See Fuge v. Uiterwyk, 97-1252 (La.App. 4 Cir. 3/25/98), 709 So.2d 357; see also La.Code Civ. Proc. art. 2164.
Dr. Blanch also argues that the trial court erred in denying his Motion to Modify Custody and his request to be designated as the domiciliary parent.[16] In making a determination with regard to whether custody should be modified, a court’s primary consideration is the best interest of the child. Id. In cases such as this one, “where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child.” Id. (citing Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, 52, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478)(emphasis added). A court may consider the following factors in determining whether a change in custody in the best interest of the child:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, *568 clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
11B(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
La. Civ.Code art. 134.
The court-appointed evaluator, Karen Houghtaling, in a written recommendation dated October 5, 2009, considered each of the above-cited twelve factors and made the following observations:
The love, affection, and other emotional ties between each party and the child
Ms. Houghtaling found that M.B. appeared securely attached to both parents; that both parents exhibited genuine affection and love for M.B.; and that the collaterals interviewed confirmed that M.B. enjoyed a strong and loving relationship with both parents.
The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child
With regard to spiritual guidance, Ms. Houghtaling concluded that both parents encouraged M.B.’s attendance in church. While Dr. Blanch expressed a desire for M.B. to attend a school that addressed her intellectual capabilities, Ms. Smith stated that she wished for M.B. to be in an academic environment that not only meets her academic needs, but also develops her developmental and emotional needs.
117The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs
Both parents were found to have the capacity to provide M.B. with food, clothing, shelter, health insurance, and material needs.
The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment
Both parents were found to provide a stable environment in a family home for M.B.
The permanence, as a family unit, of the existing or proposed custodial home or homes
Both parents had remarried and had homes with their current spouses. Ms. Houghtaling observed that Ms. Smith returned to her hometown in Mississippi in 2005 and had plans to maintain that home. M.B.’s maternal grandmother, Roberta McDuffie, lived nearby and had a close relationship with M.B. Dr. Blanch had a *569 home in New Orleans, Louisiana, with plans to maintain that home as well.
The moral fitness of each party, insofar as it affects the welfare of the child
Both Dr. Blanch and Ms. Smith were found to have the appropriate moral fitness with regard to parenting.
The mental and physical health of each party
According to Ms. Houghtaling, neither parent reported any mental or physical health issues.
The home, school, and community history of the child
Ms. Houghtaling acknowledged that M.B.’s school transcript evidenced that M.B. was an excellent student. She further found that Dr. Blanch provided M.B. with academic encouragement, as well as creative, challenging and open ended 11sacademic learning opportunities with M.B. Ms. Smith, however, expressed concern that Dr. Blanch emphasized academics to the detriment of M.B.’s other developmental and emotional needs. After interviewing M.B.’s teachers from pre-K through her current grade at that time, Ms. Houghtaling found that Ms. Smith was actively involved in M.B.’s school performance and other school activities, while Dr. Blanch was not observed to have much interaction with M.B.’s academics or school activities.
The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference
M.B. reportedly did not express a preference to Ms. Houghtaling and appeared comfortable and secure in both homes.
The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party
Ms. Houghtaling concluded that both parents recognized good and poor parenting in each other.
The distance between the respective residences of the parties
Ms. Houghtaling determined that the distance between Dr. Blanch and Ms. Smith’s homes was significant enough to make split-week parenting during the school year a burden on M.B.
The responsibility for the care and rearing of the child previously exercised by each party
Significantly, Ms. Houghtaling acknowledged that with respect to this factor, Ms. Smith has been the major caregiver for M.B. since M.B.’s birth. Ms. Houghtaling also testified at length on July 7, 2010, with regard to the observations made in her written October 5, 2009 report and the interviews she conducted in |, connection with same. She reiterated that throughout M.B.’s life, and particularly during the first three years of her life, from 2002 through 2005, Ms. Smith was the primary caregiver for M.B.[17] Ms. Houghtaling fur *570 ther testified that after taking many factors into consideration, she “felt it would be extremely disruptive for [M.B.] to be taken from the parent that had done the major care giving for seven and a half years and taken out of that environment.” [18] With regard to being attuned to M.B.’s developmental needs, Ms. Hough-taling testified that she found Dr. Blanch focused primarily on education, while Ms. Smith had a more balanced approach, supporting M.B.’s educational needs as well as M.B.’s social and emotional needs. A review of the record and testimony evidences that both parents love M.B. and enjoy a strong emotional bond with M.B. However, to remove M.B. from her domiciliary parent, who has been her primary caregiver since birth, Lncould greatly disrupt M.B. emotionally, developmentally, and academically, which would absolutely not be in M.B.’s best interest at this time. Therefore, considering the record in its entirety, we find that it is in M.B.’s best interest for Ms. Smith to remain the domiciliary parent and for the custody arrangement to remain unchanged.[19]
Dr. Blanch also maintains that the trial court erred in denying his oral Motion for Involuntary Dismissal, as there was no material change in circumstances.
Dr. Blanch made an oral Motion for Involuntary Dismissal pursuant to La. Code Civ. Proc. art. 1672(B), at the close of *571 Ms. Smith’s evidence presented in support of her Motion to Modify School.[20] This Court has recognized that the determination of what is in the best interest of the child is within the trial court’s vast discretion. Smith v. Smith, 2007-0260 (La.App. 4 Cir. 2/13/08), 977 So.2d 1114, 1117. In this case, however, our review of whether a modification of M.B.’s school is in her best interest is de novo. See Evans, 708 So.2d at 735. Although |2,we find Ms. Smith in contempt for willfully violating the August 2009 judgment, a review of the record evidences that it would not be in M.B.’s best interest to change schools at this particular point in time.
As the court-appointed evaluator, Karen Houghtaling, acknowledged, Ms. Smith has been M.B.’s caretaker since birth, and M.B. is currently nine years of age. Ms. Houghtaling also interviewed Dr. Susan Neimann, a Collateral Divorce Child Specialist, who indicated that although the divorce was satisfied on M.B. attending school in Louisiana for pre-K and subsequent schooling, she did not feel that attending school in Louisiana would be in M.B.’s best interest in the long term because M.B. would experience difficulty with regard to her school activities and friendships with her peers.[21] Additionally, Ms. Houghtaling testified that her impression of M.B. was that she was extremely happy and involved in her current school and expressed enthusiasm when describing her friends at school.
Ms. Houghtaling documented in her October 5, 2009 report and testified on July 7, 2010 regarding her interviews with M.B.’s teachers as well as an Intervention Specialist at M.B.’s schools. Ms. Jennifer Teal, an Intervention Specialist at Pearl River Central Lower Elementary School, reported that M.B.’s lowest average test score as of September 2009 was 93%; M.B.’s average test scores in other subjects were 96% and 97%. Similarly, Ms. Shannon Lenoir, M.B.’s second grade teacher at Pearl River Elementary, reported that M.B. was an “A” student who attended the gifted program at the school. At trial, Ms. Smith testified that M.B. was a straight “A” student and that M.B. participated in extracurricular activities such as gymnastics, dance classes, and swimming.
| ¡^Considering the foregoing, the evidence that M.B. is happy and thriving in her current Mississippi school, although a result of a violation of the consent judgment, is nevertheless a material change of circumstances. We find that to disrupt M.B.’s reportedly excellent academic performance in school, as well as her connections to friends and involvement with extracurricular activities at the school, would simply not be in M.B.’s best interest, notwithstanding the fact that the change in circumstances that occurred with respect to M.B.’s schooling was the direct result of Ms. Smith’s contempt of court. See Ev *572 ans, 708 So.2d at 738.[22] We find that the record demonstrates that Ms. Smith established that her Motion to Modify School in Which Child Attends was in M.B.’s best interest by a preponderance of the evidence, and that the trial court properly denied Dr. Blanch’s Motion for Involuntary Dismissal. See Franicevich v. Caillou Island Towing Co., Inc., 97-1887 (La. App. 4 Cir. 3/17/99), 732 So.2d 93, 95.
CONCLUSION
For the foregoing reasons, Ms. Smith’s Motion to Modify School is granted, and the judgment granting a “Rule to Relocate” is vacated. The trial court’s denial of Dr. Blanch’s Motion to Modify Custody[23] is affirmed. To the extent that the trial court denied Dr. Blanch’s pending Rule for Contempt, that denial is reversed. The Rule for Contempt is hereby granted and the trial court is ordered to impose a $500.00 fine against Ms. Smith. The trial court is further instructed to conduct an evidentiary hearing within thirty (30) days of the date of this judgment and to | j^award Dr. Blanch reasonable attorney’s fees accrued in connection with filing the Rule for Contempt.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED WITH INSTRUCTIONS

. Erin Blanch is currently married to Kenneth Smith, and now goes by the name Erin Smith.

. The judgment provided that in the event of a natural disaster or hurricane, M.B. would remain in the custody of Ms. Smith until shared custody could be restored.

. Dr. Blanch was ordered to pay $1,500.00 per month in child support, $1,000.00 in direct payments for tuition and extracurricular activities and classes. Dr. Blanch was further ordered to advance $10,000.00 to Ms. Blanch when M.B. goes to college, with the provision that the parties may agree to additional funds if M.B. decides to attend a major university outside of Louisiana. The judgment also ordered Dr. Blanch to make a one-time spousal support payment to Ms. Smith in the amount of $10,000.00. The judgment further provided that Erin’s mother would have custody of M.B. in the event of the deaths of Dr. Blanch and Ms. Smith.

. For the 2005-2006 and 2006-2007 school years, M.B. attended First United Methodist Preschool in Slidell, Louisiana.

. Ms. Smith also filed a Rule for Contempt, Attorney’s Fees and Costs that same date, regarding Dr. Blanch’s alleged violation of a *561 Consent Judgment of Community Property that was executed by the parties on April 25, 2006, asserting that Dr. Blanch still owed Ms. Smith $46,000.00 in monies and securities pursuant to the judgment, as well as ten percent of monies obtained from a Small Business Administration loan (Dr. Blanch testified at the hearing that he was denied an SBA loan).

. Ms. Smith sought writs with this Court regarding the July 1, 2008 judgment. This Court determined that the trial court correctly denied the vagueness exception, but reversed the trial court’s denial of Ms. Smith’s exception of no cause of action with regard to Dr. Blanch’s attempt to dissolve or nullify the April 18, 2006 Consent Judgment for Ms. Smith's failure to perform pursuant to the terms of the agreement; the trial court's denial of Ms. Smith's exception of no cause of action with regard to Dr. Blanch's pleading for a nullity action was also denied. Additionally, this Court also denied the writ application with regard to the trial court’s denial of Ms. Smith's exceptions of prematurity, res judicata, and vagueness. In re: The Marriage of Erin Blanch and Juan S. Blanch, Jr., 2008-0978 (La.App. 4 Cir. 12/2/08)(unpub.).

. After a recusal hearing before Judge Nadine Ramsey, the Motion for Recusal was denied on January 23, 2009. Ms. Smith sought writs in this Court, which were granted. On April 27, 2009, the ruling was reversed by this Court and the matter remanded to the trial court for random re-allotment. Erin Blanch v. Juan Blanch, Jr., 2009-0187 (La.App. 4 Cir. 4/27/09)(unpub.).

. Ms. Smith sought writs in this Court; her request for relief was denied. In re: The Marriage of Erin Blanch and Juan S. Blanch, Jr., 2009-1282 (La.App. 4 Cir. 9/29/09)(un-pub.).

. No Rule to Relocate had been filed.

. La. R.S. 9:355.12 provides as follows:
A. In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
B. The court may not consider whether or not the person seeking relocation of the child will relocate without the child if relocation is denied or whether or not the person opposing relocation will also relocate if relocation is allowed.

.The court further ordered that Ms. Smith was responsible for transporting M.B. to and from New Orleans, Louisiana for her visitation with Dr. Blanch.

. If the trial court intended to deny relief, we find that this was also error.

. Because the trial court found Ms. Smith in contempt for violating the April 18, 2006 Consent Judgment and assessed attorney's fees and costs of $500.00 for same, we find that for purposes of our review, Ms. Smith's contempt ran anew after the first contempt finding by the trial court.

. La. R.S. 9:346 provides as follows:
A. An action for the failure to exercise or to allow child visitation, custody or time rights pursuant to the terms of a court-ordered schedule may be instituted against a parent. The action shall be in the form of a rule to show cause why such parent should not be held in contempt for the failure and why the court should not further render judgment as provided in this Section.
B. If the action is for the failure to exercise child visitation, custody or time rights pursuant to the terms of a court-ordered schedule, and the petitioner is the prevailing party, the defendant shall be held in contempt of court and the court shall award to the petitioner:
(1) All costs for counseling for the child which may be necessitated by the defendant’s failure to exercise visitation, custody or time rights with the child.
(2) A reasonable sum for any actual expenses incurred by the petitioner by reason of the failure of the defendant to exercise rights pursuant to a court-ordered visitation, custody or time schedule.
(3) A reasonable sum for a caretaker of the child, based upon the hourly rate for caretakers in the community.
(4) All attorney fees and costs of the proceeding.
C. If the action is for the failure to allow child custody, visitation, or time rights pursuant to a court-ordered schedule, and the petitioner is the prevailing party, the defendant shall be held in contempt of court and the court shall award to the petitioner:
(1) A reasonable sum for any actual expenses incurred by the petitioner by the loss of his visitation, custody or time rights.
(2) Additional visitation, custody or time rights with the child equal to the time lost.
(3) All attorney fees and costs of the proceeding.
(4) All costs for counseling for the child which may be necessitated by the defendant’s failure to allow visitation, custody, or time rights with the child.
D. The court may award a reasonable penalty to the petitioner against the defendant upon a finding that the failure to allow or exercise visitation, time or custody rights pursuant to the terms of a court-ordered visitation schedule was intended to harass the petitioner.
E. The court may award attorney fees and costs to the defendant if he is the prevailing party, based upon actual expenses incurred.
F. The court may require the prevailing party to submit proof showing the amounts to be awarded pursuant to this Section.
G. It shall be a defense that the failure to allow or exercise child visitation rights pursuant to a court-ordered schedule was by mutual consent, beyond the control of the defendant, or for other good cause shown.
H. A pattern of willful and intentional violation of this Section, without good cause, may be grounds for a modification of a custody or visitation decree.
I. This Section applies to judicial orders involving sole or joint custody.
J. The action authorized by this Section shall be in addition to any other action authorized by law.

. See discussion regarding Ms. Smith's Motion to Modify School and Dr. Blanch’s Motion to Modify Custody infra.

. Dr. Blanch expressed to Ms. Houghtaling that he wanted M.B. to live with him in New Orleans, Louisiana and to attend public school (Lusher) in New Orleans. It was undisputed that M.B. would be unable to attend public school in Slidell, Louisiana, as neither parent resided in Slidell; however, Dr. Blanch reportedly indicated to Ms. Houghtal-ing that he would be willing to pay 50% of the tuition of a private school in Slidell with a 14/14 day split in parenting time. At trial, Dr. Blanch testified that, given the choice, he would enroll M.B. in school in Slidell.

. Ms. Houghtaling testified that the first three years are particularly critical with regard to bonding and attachment:
Q. Erin reported to you, it’s on Page 5 in your report, that from 2002 to 2005, that Dr. Blanch worked away from home two to three days a week in connection with his duties as an emergency room physician, correct?
A. Yes.
Q. And she indicated to you that, when he was home, oftentimes, he was not particularly attentive to the care of [M.B.], correct?
A. Correct.
* * * *
Q. It is your understanding, based on child development, that the first three years of a child’s life are crucial, that individual in developing [sic], bonding and attachment, correct?
A. It is.
Q. And there is no doubt in your mind that, during this crucial stage, that Miss Smith was the parent who was primarily responsible for the day-to-day care of [M.B.], correct?
*570 A. Correct.
Q. In fact, throughout [M.BJ’s life she has been the parent who has been primarily responsible for her day-to-day care, correct?
A. Correct.

. Ms. Houghtaling further testified that it would be extremely disruptive to remove M.B. from her current environment:
Q. Now, regarding the other aspect of joint custody, the amount of time that [M.B.] should spend with each parent, you concluded that Erin should be the primary domiciliary parent, for physical custodial purposes, correct/
A. For physical custodial, yes.
Q. Can you tell the Court the reasoning or rationale for that decision?
A. Because it was the decision of the parents, from the time the child was born, that Erin would be the major caregiver for the child, and [M.BJ's father agreed, through the child care questions, that he was not part of that caregiving when she was an infant, and to change that — the tender years are zero to seven. The child gets bonded, and parents and child become bonded and attached, and this is what [M.B.] has — {M.BJ’s parents chose for her, and this is what she is used to, and I thought it would be extremely disruptive to take that away from her.

. Dr. Blanch asserts that Ms. Smith’s repeated failure to abide by the court’s orders constitutes a change in circumstances pursuant to Cook v. Cook, 2007-2091 (La. 12/14/07), 970 So.2d 960, and thereby justifies a modification of custody. However, the violation at issue in Cook was the fact that the mother, Christi, moved in with and attended her children’s special events with Shannon Maloney, with whom she was romantically involved. A joint custody implementation plan ("JCIP”) between the parents explicitly stated that "Neither parent shall allow Shannon Maloney to be associated with the minor children and thereby allowing her to live or visit in the home....” The Court found Christi in contempt for violating the JCIP, and held that this violation constituted a material change in circumstances justifying a modification of custody. The Court acknowledged the district court’s finding of "a pattern of misconduct which demonstrated Christi’s disregard for the best interests of the children” as well as Christi’s "encourage[ment to] the children to deceive their father” and her "attempts] to deceive the court about where Shannon lived.” A court-appointed mental health counselor also indicated that "Shannon did not represent an appropriate parental figure for the children” and that "Christi's relationship with Shannon was not in the children's best interests.” We find that the contempt at issue Cook is not analogous to Ms. Smith’s enrollment of M.B. in a Mississippi school and that Dr. Blanch’s reliance upon same to attempt to modify custody is misplaced.

. Article 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in
favor of the moving party or may decline to render any judgment until the close of all the evidence.
La.Code Civ. Proc. art. 1672(B).

. At trial, Dr. Blanch testified that he and Ms. Smith brought M.B. to Dr. Neimann to determine M.B.’s psychological status, and that they met with Dr. Neimann both separately and together.

. Dr. Blanch relies upon Shaw v. Shaw, 30,-613 (La.App. 2 Cir. 6/24/98), 714 So.2d 906, arguing that the court in that case found that a child’s commencement of kindergarten and longer school hours was not a material change justifying a change in the custody agreement. Dr. Blanch also relies upon Haik v. Haik, 94-563 (La.App. 5 Cir. 12/14/94), 648 So.2d 1015, noting that the court in that case held that simply because parents changed their minds with regard to custody provisions, the consent judgment, which awarded joint custody and provided details for shared custody, was insufficient to justify modifying the consent judgment. The modification Dr. Blanch opposes, however, is not a modification of custody, but another provision of the consent judgment, regarding a modification of M.B.’s school. We find that Dr. Blanch’s reliance upon these cases is misplaced.

. The trial court's August 13, 2010 judgment does not expressly deny Dr. Blanch's Motion to Modify Custody, but rather orders that "all other provisions of the April 18, 2006 Consent Judgment shall not change.”