409 So.2d 320 (1981)
Bethany Villere TUCKER
v.
Germaine ATTERBURG, d/b/a Bits of Europe, Inc. and Bits of Europe, Inc.
No. 12360.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 1981.
Rehearing Denied February 17, 1982.
*321 Robert Hugh Matthews, Matthews & Breeden, New Orleans, for defendant-appellant.
A. D. Freeman & Charlotte Hays, Satterlee, Mestayer & Freeman, New Orleans, for plaintiff-appellee.
Before REDMANN, SCHOTT and KLEES, JJ.
REDMANN, Judge.
A compromise must be in writing to be enforceable, La.C.C. 3071, although the writing may be composed of two documents such as a release signed by a claimant and a check signed by the defendant for the amount specified in the release, Felder v. Georgia Pacific Corp., 405 So.2d 521 (La. 1981). The present case involves two documents, an agreement signed by plaintiff and a check to the order of the sheriff signed by defendant. Our two documents, however, do not form an offer and acceptance as did those of Felder because their terms differ radically. We thus have no writing embodying a compromise. Nor do we have payment of plaintiff's claim by defendant. We therefore reverse the trial judge's judgment that made peremptory a "rule to show cause why a compromise settlement agreement should not be consummated by delivery to plaintiff of the funds held for her account" by the sheriff.
Plaintiff lessor sued March 10, 1980 for $350 rent past due since March 1 and, under an acceleration clause of the lease, $2,800 rent for the remaining eight months plus 10% attorney's fees, and obtained a writ of sequestration seizing the stock in trade of antiques in the leased premises. Seizure was effected on March 13 and the sheriff placed keepers on the leased premises (effectively dispossessing defendant of her business and defeating the purpose of her lease) and made arrangements to move the seized antiques into a warehouse on March 14.
Discussions about releasing the seizure were had between plaintiff and defendant, and plaintiff signed a letter agreement that defendant would deliver $674 plus four items of furniture to plaintiff and "If, for any reason, you [defendant] are not able to fulfill the terms of the lease, the furniture becomes mine by default, and the remainder of the lease is cancelled in my favor and reverts back to me for my use." That letter agreement was presented to defendant for her signature by the sheriff's keeper but defendant refused to consent to its pledge with forfeiture provision-a provision refused enforcement by western civilization since the days of the Roman emperor Constantine; see Alcolea v. Smith, 150 La. *322 482, 90 So. 769 (1921).[1] Instead, defendant gave her check to the sheriff in the amount of the entire rent claimed, plus 10% attorney's fees, plus costs (except that the keeper-deputy told her she would probably owe more for the movers' inventorying already done). But, the keeper testified, defendant "specifically" told him "that she didn't intend to pay that money to the plaintiff."
Plaintiff testified that defendant "called and asked if instead [of the letter agreement] she could just pay off the entire amount.... She said she wanted to pay me off in full." But defendant testified she had no such intent; that all she wanted to do was reopen her business, and she believed that by putting up the full amount of plaintiff's claim plus attorney's fees and costs she could do so, while the cash was to be held in lieu of her stock of antiques.
Plaintiff in brief would "respectfully suggest that the factual findings of the trial judge turned on the credibility of the defendant" and were not manifestly erroneous.
The whole purpose of C.C. 3071's requirement that compromise be in writing is to avoid swapping a new dispute for an oldto avoid the necessity of credibility evaluations. Specifically, the writing requirement aims at avoiding litigation over what the terms of a settlement are. We therefore reject any theory that defendant's check to the sheriff constituted an enforceable compromise of her dispute with plaintiff. Certainly defendant's check was unsigned by and did not bind plaintiff in any way (e.g., for inventory costs).
The question remains whether the check was payment of plaintiff's claim. In Thompson v. Albanese, 120 So.2d 860 (La. App.Orl.1960), our predecessor court said that the payment to the constable of the amount of a writ of provisional seizure to avoid the embarrassment of seizure, although made "under protest," was a payment of the claim. But that case was not treated as settled becaused of the "payment;" the case was fully tried, resulting in a judgment for $23 less than the amount sought. The court of appeal's ratio in increasing the judgment to the full amount sought was not that defendant's "payment" of the full amount precluded judgment for a lower amount. Rather, the court explained, id. at 863, that the deduction of that $23 was error: "That amount, $23.18, was the amount which had been paid on a previous bill for work on that machine." Thus Thompson's talk of "payment" cannot be considered even an alternate ratio. That "payment" talk was obiter dictum, unnecessary to that decision because it came after full trial and appeal on the merits. Thus Thompson, a case in which trial was in fact had on the merits, cannot be said to have decided that no trial should be had on the merits. Thompson is not authority for refusing defendant a trial.
It must further be noted that our facts differ from Thompson`s, whatever the import of that case. Although the situations have the same beginning, our defendant did not simply "pay" the writ to avoid embarrassment. She suffered the presence of keepers, the effective closing of her business, while she attempted to work out some means of reopening her business. It is clear, from the letter signed only by plaintiff, that the attempt being made was not to pay off the whole accelerated rent and other costs but to obtain relief from the paralyzing seizure. In Thompson the proposed seizure of the air conditioner might have embarrassed plaintiff but it did not put him out of business.
The payment of a judgment to forestall "the jeopardy of the auction block," DLJ of La. v. Green Thumb, Inc., 376 So.2d 121, 123 (La.1979), is somewhat comparable to payment of the amount of a writ of sequestration to avoid the jeopardy of closure of one's business (although defendant insists she did not pay but merely provided a substitute as ransom for her stock in trade). C.C.P. 2003, governing payment of a judgment, *323 is the only statute we find in pari materia. Its principle is that "voluntary" acquiescence in a judgment precludes an action to declare the judgment null. Green Thumb held the statutory preclusion inapplicable to a payment made to prevent a judicial sale because so involuntary an act cannot support an inference of acquiescence.
Similarly, we hold that so involuntary an act as a defendant's providing funds to release a business-closing sequestration (even if less than the bond amount of the claim plus a fourth, C.C.P. 3508) cannot by itself support an inference that payment of the plaintiff's claim is either intended or accomplished. The irregularity in the amount and otherwise does not defeat defendant's intent to provide a substitute security for the lessor's claim. As said in another context, when the 1870 Code of Practice provided a forthcoming bond in similar cases, "the formalities presented by the article of the Code in order to fix the amount of that obligation, are entirely for the benefit of and in the interest of the lessor and lessee, and no logical reason can be advanced why the lessor and lessee could not waive such formalities." Honeycutt v. Whitten, 152 La. 1045, 95 So. 216, 218 (1923).
We conclude that defendant has not waived any right either by compromise or by payment.
Reversed and remanded at plaintiff's cost.
NOTES
[1] "[S]uch stipulations ... are contra bonos mores and oppressive ... [,] involve the abuse of the power of the strong over the weak, represent odious speculations by those who have money, at the expense of those who need it, and are unconscionable." 90 So. at 771.