HOLDRIDGE, J.
*579 Defendant, United States Services Automobile Association (USAA), appeals a judgment rendered in favor of plaintiffs, Dr. Fredrick Lind, Jr. and Mary Elizabeth Lind, awarding actual damages and penalties. We reverse both awards, conduct a de novo review of the record, and render a damage award and a penalty award based on that review.
PROCEDURAL AND FACTUAL BACKGROUND
In the early 1980's, the Linds purchased a 1972 Maserati Ghibli SS, a very rare vehicle, from Edmond Waterman for approximately $20,000.00. In 1995, the Linds hired Wedge Kyes Import Specialties, Inc. to repair the vehicle's engine and retained Pierre Mabile to do restoration body work on the vehicle. Later, the Linds hired Alex Peters to complete the engine repair. In 2006 or 2007, Wedge Kyes transferred the vehicle to Mr. Peters, who operated out of a shop in New Orleans. Sometime thereafter, Dr. Lind inspected his vehicle inside Mr. Peters' shop. On July 19, 2012, Dr. Lind made a trip to Mr. Peters' shop and discovered that Mr. Peters and the vehicle were nowhere to be found. Dr. Lind reported the vehicle stolen to police a few days later and made a claim with USAA, which issued a policy providing comprehensive coverage on the Maserati to the Linds, reporting the vehicle as stolen. On July 31, 2012, USAA notified Dr. Lind that it opened a claim and was investigating the matter.
The Linds eventually found the vehicle on a rooftop of another mechanic shop in New Orleans owned by Milton F. "Chip" Hilbert. It is undisputed that the vehicle was badly deteriorated when it was found and that it was missing various component parts, including its engine, transmission, radiator, and exhaust system.
By letter dated November 29, 2012, USAA informed Dr. Lind that it was denying coverage of the vehicle because there was no evidence that a theft of the vehicle had occurred. By letter dated January 30, 2013, Dr. Lind was notified that USAA could not cover the claim on the basis of vandalism because its appraiser had found no evidence of vandalism.
On June 27, 2013, the Linds filed this lawsuit for "negligent repair" and other damages against USAA, Mr. Peters, Wedge Kyes, and Mr. Hilbert. In the petition, the Linds alleged that Mr. Peters removed the engine, transmission, and other component parts of the vehicle from the State of Louisiana, requiring that they expend at least $70,000.00 to replace the stolen or lost component parts. As to USAA, the Linds specifically alleged that it breached its contractual obligation to compensate them and sought to recover all replacement and repair costs. Additionally, the Lind's sought to recover penalties in the amount of two times the actual damages and attorney's fees for USAA's alleged arbitrary and capricious failure to abide by its contractual obligations.
On August 21, 2014, the Linds voluntarily dismissed Wedge Kyes from the litigation. On August 21, 2015, the trial court granted Mr. Hilbert's motion for summary judgment, dismissing all of the Linds' claims against him with prejudice. On April 16, 2016, a preliminary default judgment was rendered against Mr. Peters, who failed to answer the lawsuit.
On February 2, 2015, USAA made an unconditional tender in the amount of $19,800.00 to the Linds, which was refused. A bench trial against USAA was held on July 14, 2016. The disputed issues in the case were the date on which the loss occurred, the value of the Maserati on the date of the loss, and whether USAA was *580 arbitrary and capricious in denying the claim and waiting over two and a half years from the date USAA opened a file on the Linds' claim to make a tender of any type.
At the outset of the trial, the court addressed the Linds' motion in limine to prevent USAA's adjuster to testify regarding a Maserati valuation. USAA stipulated that its adjuster, Bruce White, was not an expert in Maserati valuation and the Linds withdrew their motion in limine. During the one-day bench trial, the Linds presented the testimony of Dr. Lind, Mr. Mabile, Wedge Kyes, the owner of Wedge Kyes Import Specialties, Inc., and Mr. Waterman, an expert in Maserati valuations. USAA presented the testimony of its insurance adjuster, Mr. White, and the testimony of Mr. Kyes. Documentary evidence, including the USAA policy, photographs of the vehicle, various repair invoices, USAA's correspondence with the Linds, the police report, and a Hagerty Guide Vehicle Valuation report for 1972 Maserati Ghiblis was introduced at trial.
During closing argument, USAA acknowledged that the vehicle's component parts probably had been stolen and that USAA did owe the Linds the value of the missing parts. By judgment signed on July 18, 2016, the trial court entered judgment in favor of the Linds, awarding actual damages in the amount of $125,000.00, damages pursuant to La. R.S. 22:1973 et. seq. in the amount of $62,500.00, expert witness fees, legal interest, and all costs of the proceedings. In written reasons for judgment, the court noted that while the exact date of the loss was speculative, the loss did not occur before July of 2012. Apparently using the date of July 2012 as the date of the loss, the court observed that there was testimony establishing that if the vehicle had been completely restored on the date of the loss, the value of a Maserati would have been between $100,000.00 and $125,000.00. The court also found that a penalty award against USAA was proper pursuant to La. R.S. 22:1973 on the basis that USAA failed to fulfill its contractual obligations to compensate the Linds for their loss within a reasonable amount of time. The court further found that although USAA took over two and a half years to attempt to compensate the Linds, USAA did not act in bad faith, nor was it arbitrary or capricious under La. R.S. 22:1892, by failing to pay the Linds for the loss of the automobile. Instead, the court found that USAA was reasonable in continuing with its investigation to determine the actual date of loss and the value of the vehicle.
USAA filed a motion for a new trial attacking the trial court's damage award and the award of penalties. The motion was denied on October 3, 2016. USAA filed a suspensive appeal of the trial court's July 18, 2016 judgment awarding damages and penalties and the October 3, 2016 denial of its motion for a new trial. On November 4, 2016, the trial signed a written judgment denying USAA's motion for a new trial.
In this appeal, USAA contends that the trial court erred in these respects: (1) casting USAA in judgment for bad faith under La. R.S. 22:1973 while at the same time making an affirmative ruling that USAA was reasonable under La. R.S. 22:1892 ; (2) casting USAA in judgment for bad faith under La. R.S. 22:1973, when no reasonable factual basis existed for the finding at trial; (3) awarding damages in the amount of $125,000.00; (4) failing to allocate fault to Mr. Peters for his negligence in the storage of the vehicle; and (5) failing to take into account the salvage value of the vehicle in awarding damages, resulting in a windfall to the Linds.
*581 STANDARD OF REVIEW
Factual findings may not be set aside by this court unless we determine there is no reasonable basis for the findings and the findings are clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). If the findings are reasonable in light of the record viewed in its entirety, this court may not reverse even if convinced that had it been the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). However, where one or more trial court legal errors interdict the fact-finding process, the "manifest error" or "clearly wrong" standard no longer applies, and if the record is otherwise complete, an appellate court should make its own independent de novo review of the record and render a judgment in accordance with a preponderance of the evidence. Ferrell v. Fireman's Fund Insurance Company, 94-1252 (La. 2/20/95), 650 So.2d 742, 747 ; Burdette v. Drushell, 2001-2494 (La. App. 1 Cir. 12/20/02), 837 So.2d 54, 59, writ denied, 2003-0682 (La. 5/16/03), 843 So.2d 1132.
DAMAGES
USAA issued a policy to the Linds providing comprehensive coverage on the Maserati. Pursuant to the terms of such coverage, USAA is obligated to "pay for loss caused other than by collision" to the covered auto, and equipment and accessories that are not permanently installed in your covered auto," minus the $200.00 deductible shown in the declarations. A "loss" is defined in the policy as "direct and accidental damage to the operational, safety, function, or appearance of, or theft of, your covered auto or equipment and accessories that are not permanently installed in your covered auto." The policy further provides that the term "loss" includes "a total loss," but does not include "any damage other than the cost to repair or replace" and does not include "any loss of use, or diminution in value that would remain after repair or replacement of the damaged or stolen property." Under the section entitled "LIMIT OF LIABILITY," the policy provides that with respect to a "total loss," the limit of USAA's comprehensive coverage is the "actual cash value" of the covered auto. USAA can declare the vehicle to be a total loss if, in its judgment, the cost of repair would exceed 75% of the actual cash value immediately before the loss or would be greater than its actual cash value minus the salvage value after the loss. For other than a total loss to the covered auto, USAA's limit of liability under its comprehensive coverage is the amount necessary to repair the loss based on its estimate or an approved estimate.
The USAA policy defines the term "actual cash value" (ACV) to mean "the amount that it would cost, at the time of loss, to buy a comparable vehicle." It further states that a comparable vehicle is one which is of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." The policy contains an exclusion for damages due and confined to mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of the covered auto or its equipment.
USAA acknowledged from the outset of this dispute that comprehensive coverage included "partial theft," and later admitted that comprehensive coverage included the theft of the vehicle's component parts.[1]
*582 Furthermore, while the date of the loss of the vehicle was disputed at trial, neither party has appealed the trial court's factual determination that the loss of the vehicle did not occur before July of 2012. Therefore, in addressing the issues associated with the damage award, we shall assume that the covered loss occurred during July of 2012.
The record reflects that Dr. Lind purchased the subject vehicle in 1983 from Mr. Waterman, who owned a vehicle dealership in Arlington, Virginia. The vehicle was driven to Baton Rouge by Dr. Lind's son. At some point, Dr. Lind noticed an engine problem with the vehicle, and sometime in 1995, he brought it to Wedge Kyes, a Baton Rouge automobile repair business. According to its owner, Mr. Kyes, the vehicle had an engine problem and was not running; the engine and transmission were removed from the vehicle. The vehicle was then sent to Pierre's Restoration Garage for body work. Mr. Mabile, the owner of the shop, testified at length regarding the exterior restoration work he did to the vehicle. The vehicle stayed at Mr. Mabile's shop until sometime around late 1996. At the time the vehicle left Mr. Mabile's shop, there was additional body work that needed to be done after the engine had been reinstalled, which Mr. Mabile estimated to cost $3,500.00. Mr. Mabile stated that the only interior work remaining to be done was the installation of new carpets, which would cost $600.00 to $1,000.00. According to Mr. Mabile, the vehicle was "90% complete" when it left his shop and had he been able to complete the restoration job, the vehicle would have been in "show-car condition," which he believed would qualify the vehicle as a "Hagerty's Condition # 2".
After leaving Mr. Mabile's shop, the vehicle was returned to Mr. Kyes for the reinstallation of the engine. Mr. Kyes had disassembled the engine, purchased parts to complete the engine rebuild, and did machine work to put the engine back together. However, he was having difficulty completing the engine rebuild, and needed a specialist who could reassemble the engine. Mr. Kyes put Mr. Lind in touch with Mr. Peters, and Mr. Peters was engaged to complete the engine work. The vehicle left Mr. Kyes custody around the end of 2006 or early 2007. Mr. Kyes testified that when the vehicle left his shop, the engine, transmission, and exhaust system were shipped with it, and that no component parts of the vehicle remained in his shop after the vehicle was sent to Mr. Peters' shop in New Orleans. Mr. Kyes was fairly certain that the radiator was in the vehicle when it left his shop. Earlier, Mr. Mabile had testified that when the vehicle left his shop, the radiator was in it. Mr. Kyes acknowledged that when it left his shop, the vehicle was not a complete vehicle, estimating it was only 60% of being fully and completely running. He estimated that it would have cost approximately $6,000.00 to $8,000.00 to get the engine back into excellent running condition.
Dr. Lind testified that he went to Mr. Peters' shop in New Orleans at some point and saw the vehicle parked inside of the shop; it appeared to be in "excellent" condition, the same as when it was restored by Mr. Mabile. On July 19, 2012, Dr. Lind went to the shop to see his vehicle and Mr. Peters was not present. The vehicle had been removed from the shop; Dr. Lind called the police several days later and filed an incident claim, reporting the vehicle as stolen. In August 2012, Dr. Lind found the vehicle on the rooftop of a mechanic shop in New Orleans. He took pictures of the vehicle at that time, which *583 depict significant damage to the interior and exterior of the vehicle. According to Dr. Lind, the vehicle was "unrecognizable".
The record reflects that the Hagerty Vehicle Valuation Guide, which is published three times a year, is a guide listing all collectable post-war automobiles and is relied upon by damage estimators in determining vehicle valuations. A vehicle is classified based on its condition. A Condition # 1 vehicle is the highest rating and is a vehicle in concourse condition, which very few vehicles actually achieve. A Condition # 2 vehicle is a one that is excellent condition; it is a vehicle that is typically restored, extremely well maintained, and is in a condition one would find few flaws with. A Condition # 3 vehicle is one that is starting to show signs of wear and a professional could find very many flaws with it. The lowest classification, a Condition # 4, is a nice car that is a "daily driver" vehicle, one the owner would perhaps drive occasionally.
Mr. Waterman, who was accepted by the court as an expert in the appraisal of exotic vehicles including the Maserati, testified that there were less than 1200 Maserati Ghiblis ever made, and that he had participated in the buying or selling of 35-50 of those models. Mr. Waterman is a contributor to the Hagerty's Guide. He testified that on July 31, 2012, if all of the restorations that were contemplated had in fact been completed on the vehicle, Dr. Lind's Maserati would have qualified as a Hagerty Condition # 2 vehicle with a value of $100,000.00 to $125,000.00. He further offered his opinion that the market value of the vehicle, if all of the restorations had been complete, would be between $125,000.00 and $150,000.00, independent of its Hagerty valuation. Mr. Waterman acknowledged that if one went solely by the Hagerty guide in evaluating the Maserati in the condition it was in 2012, it would apparently have no value because it was not in running condition and the Hagerty values always assume a vehicle is in running condition. After looking at photographs of the vehicle as it existed in 2012 when Dr. Lind found it on the rooftop, Mr. Waterman testified that the vehicle would still have some commercial value, estimating the value of the remains of the vehicle to be $15,000.00 to $20,000.00.
Mr. Waterman also testified as to the value of the component parts of the Maserati that were missing. He estimate it would cost $30,000.00 to $50,000.00 to replace an engine for the vehicle with one that was rebuilt and in excellent running condition. He also estimated that a transmission with 22,000 miles on it would cost $10,000.00 to $15,000.00, a radiator would cost $2,000.00 to $3,000.00, and it would cost approximately $2,200.00 to $2,500.00 to replace the exhaust system with a new system. Mr. Waterman's estimates were based on what it would cost at the present time to replace the component parts. He also noted it would be easy to find a used exhaust system, for which a discount would have to be given. Mr. Waterman testified that a vehicle with matching serial numbers for the vehicle and its parts are more valuable and sell more quickly than a vehicle without matching numbers. According to Mr. Waterman, even if Dr. Lind bought replacement parts, they would not be the same as they were before the theft, and the value of the car would be decreased by about 20%. On cross-examination, Mr. Waterman was asked what the value of the missing engine would have been in 2012. He testified that an engine would have cost at least $25,000.00 in 2012 and admitted that if parts still had to be located for the engine, it would not necessarily be worth $25,000.00 to $30,000.00. Mr. Waterman acknowledged that the vehicle's component parts become more valuable over time, and *584 the date of the evaluation would make a difference for valuation purposes.
Mr. White, USAA's claims manager, admittedly is not an expert in Maserati valuation, but had 35 years of experience in restoring vehicles. He did not disagree with the numbers offered by Mr. Waterman regarding valuation. Mr. White testified that when he inspected the vehicle, everything in the interior of the car, including the seats, carpet, and dash were cracked and badly deteriorated. He found that paint had deteriorated from the car and that considerable rust was present on the car, primarily on the top surfaces, and that several tires were flat. He also noted that the engine, primary drivetrain, and transmission were missing from the vehicle. According to Mr. White, the Maserati presently is below a Condition # 4 vehicle because it is not drivable. He stated that even if the engine and transmission were with the vehicle, it would not be in running condition.
Mr. White testified that the very rare Maserati still had intrinsic value; however, he was not allowed to offer testimony as to the value of the vehicle in its present condition. Mr. White discussed the term "actual cash value," stating that is the amount an owner should expect to get from the car as it sits at the time of the loss, or the amount it would cost at the time of the loss to buy a comparable vehicle. He testified that from USAA's standpoint, the Maserati was a project car that had never been a complete vehicle and thus did not have the true high end value it could have if the repairs and restorations been completed.
The trial court's $125,000.00 damage award is a factual question that ordinarily would be reviewed by the manifest error standard of review. However, in this case, we are unable to accord the factual finding the great deference to which it would ordinarily be entitled. The trial court improperly considered evidence indicating what the value of the vehicle could have been had contemplated repairs and restorations actually been performed on the vehicle. However, the USAA policy plainly defines the term "actual cash value" to mean "the amount that it would cost, at the time of loss, to buy a comparable vehicle." A comparable vehicle is one which is "of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." It is undisputed that on the date of the loss, the Maserati was not running and was in a very poor, deteriorated condition. Mr. Waterman estimated the actual value of the remains of the Maserati as it appeared in photographs taken in 2012 (the date of the loss) to be between $15,000.00 and $20,000.00. We conclude that the trial court committed legal and factual error in finding that the ACV of the Maserati on the date of the loss was $125,000.00. Because a legal error implicit in the fact-finding process occurred in this case, and the record regarding USAA's liability to the Linds is otherwise complete, we shall review the record de novo and determine the amount the Linds are entitled to recover for their loss under the USAA policy. See Lachico v. First National Bank Shares, Inc., 95-2124 (La. App. 1 Cir. 4/30/96), 673 So.2d 305, 308.
The Linds and USAA are bound by the terms of their contract. The burden is on the Linds to prove the facts necessary for recovery. Kikendall v. American Progressive Insurance Company, 457 So.2d 53, 58 (La. App. 1 Cir. 1984). The evidence demonstrated that the ACV of the Maserati on the date of the loss was at most $20,000.00. Because the Linds retained the Maserati, USAA is not bound to compensate them for the remains of the vehicle.
*585 However, we find that USAA is obligated to compensate the Linds for the value of the vehicle's stolen component parts. The USAA policy admittedly covered a "partial theft", which USAA acknowledges includes the value of the stolen component parts of the vehicle. We believe the proper measure of damages in this case is to award the Linds the replacement value of the missing component parts of the vehicle on the date of the loss, which was not before July 2012. Mr. Waterman estimated the present-day cost of a rebuilt engine in excellent running condition to be between $30,000.00 and $50,000.00. On cross examination, he testified that the value of a Maserati engine in 2012 was at least $25,000.00. He explained the difficulty of finding an engine for a Maserati Ghibli, noting that one would have to search for an engine with other restorers, enthusiasts, and parts dealers, and hope to find the right engine and the price can vary anywhere from $25,000.00 to $50,000.00. We award the Linds $30,000.00 for the loss of the vehicle's engine. We further award the Linds $15,000.00 for the loss of the transmission, $3,000.00 for the loss of the radiator, and $2,500.00 for the exhaust system. Accordingly, the trial court's damage award of $125,000.00 is hereby reversed, and judgment is entered in favor of the Linds in the amount of $50,500.00 on their damage claim.
PENALTIES
An insurer owes its insured a duty of good faith and fair dealing. As such, an insurer has an affirmative duty to adjust claims fairly and promptly and make a reasonable effort to settle claims. Louisiana law provides for the imposition of penalties against insurance companies who act in bad faith under two statutes, La. R.S. 22:1892 and La. R.S. 22:1973. Both La. R.S. 22:1892(B)(1) and La. R.S. 22:1973(B)(5) and (C) provide for penalties, including attorney's fees, against an insurer whose failure to pay a claim after receiving satisfactory proof of loss is found to be arbitrary, capricious, or without probable cause. These penalty provisions are penal in nature and must be strictly construed. Henderson v. State Farm Mutual, 51,567 (La. App. 2 Cir. 8/9/17), --- So.3d ----, 2017 WL 3400616 ; Jones v. Government Employees Insurance Company, 2016-1168 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 921-922, writ denied, 2017-1339 (La. 11/6/17), 229 So.3d 473.
It is well settled that a plaintiff seeking to recover penalties and attorney's fees against an insurer must prove that the insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse. Lastrapes v. Progressive Security Insurance Company, 2010-0051 (La. 11/30/10), 51 So.3d 659, 663. Our courts have held that bad faith should not be inferred from an insured's failure to make a timely tender when there is a reasonable and legitimate question regarding coverage. Id. In order to establish a cause of action for penalties and attorney fees, the Linds were required to show that: (1) USAA received satisfactory proof of loss; (2) USAA failed to tender payment within thirty days ( La. R.S. 22:1892 ) or sixty days ( La. R.S. 22:1973 ) of receipt thereof, and (3) USAA's failure to pay is arbitrary, capricious, or without probable cause. Jones, 220 So.3d at 922.
Our Supreme Court has held that the phrase "arbitrary, capricious or without probable cause" is synonymous with "vexatious." Guillory v. Lee, 09-0075 (La. 6/26/09), 16 So.3d 1104, 1127. A vexatious refusal to pay means one that is unjustified, without reasonable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good faith defense. Id. Thus, an insurer who does not tender unconditionally *586 a reasonable payment, a figure over which reasonable minds could not differ, will be subject to penalties and attorney's fees. Id . ; McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La. 1985).
The question of arbitrary and capricious behavior is generally a factual issue, and the trial court's finding should not be disturbed on appeal absent manifest error. Guillory, 16 So.3d at 1127. In this case, the trial court found that USAA did not act arbitrarily and capriciously in failing to make a tender of any type for over two and a half years after it had notice of the claim. The court specifically found that USAA was reasonable in continuing with the investigation to determine the actual date of the loss and the value of the vehicle. However, the court awarded the Linds damages pursuant to La. R.S. 22:1973 in the amount of $62,500.00, representing one-half of the damage award. The finding that USAA did not act arbitrarily and capriciously or without probable cause, and an award of penalties under La. R.S. 22:1973, simply cannot be reconciled.
Because the trial court committed legal error in awarding penalties under La. R.S. 22:1973 without a finding of arbitrary and capricious action on USAA's part, we must reverse the $62,500.00 award. We shall conduct a second de novo review of the record to determine whether the Linds are entitled to recovery under La. R.S. 22:1973 or La. R.S. 22:1892.
While USAA was justified in refusing to compensate the Linds for the value of a Hagerty Guide Condition # 2 vehicle on the date of the loss, we find that USAA did act arbitrarily, capriciously, and without probable cause in refusing to compensate the Linds for the loss of the component parts of the vehicle. USAA was aware that the vehicle was missing component parts and never made an offer of any type to compensate the Linds for the loss thereof, although USAA candidly admitted that the policy provided coverage for the theft of the component parts. Under these circumstances, we award the Linds damages under La. R.S. 22:1892 in the amount of 50% of the damages owed to the Linds for the loss of the vehicle's component parts, for a total award of $25,250.00.
DECREE
The judgment awarding actual damages in the amount of $125,000.00 and $62,500.00 in damages pursuant to La. R.S. 22:1973 et. seq. is hereby reversed. Judgment is rendered in favor of plaintiffs Frederick E. Lind, Jr. and Mary Elizabeth Lind and against defendant United States Automobile Association for damages in the amount of $75,750.00, representing an actual damage award of $50,500.00 and an additional award pursuant to La. R.S. 22:1892 in the amount of $25,250.00. All other aspects of the judgment appealed from are affirmed.
REVERSED IN PART AND RENDERED; AFFIRMED IN PART.

On January 30, 2013, USAA wrote a letter to Dr. Lind stating that "[a]s requested, the covered perils under Comprehensive" coverage included "partial theft." During closing argument at trial and during oral argument before this court, USAA acknowledged that the policy would provide coverage for the theft of the vehicle's component parts.