# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2019 CA 0443

# JERRY HARRIS AND ELNORA HARRIS

# VERSUS

# UNION NATIONAL FIRE INSURANCE COMPANY

Judgment Rendered: JAN 1 5 2020

********

Appealed from the 21st District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 136690

Honorable Jeffrey S. Johnson, Judge Presiding

********

| | |
|---|---|
| Hobart O. Pardue, Jr. | Counsel for Plaintiffs/Appellees |
| Springfield, Louisiana | Jerry Harris and Elnora Harris |
| | |
| Christopher A. D'Amour | Counsel for Defendant/Appellant |
| Martin A. Stern | Union National Fire Insurance |
| Sara C. Valentine | Company |
| New Orleans, Louisiana | |

********

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**Lanier, J.**

In this case, defendant, Union National Fire Insurance Company ("Union National"), challenges the district court's judgment awarding plaintiffs, Jerry and Elnora Harris ("Harrises"), over $63,000.00 in general and special damages, attorney fees, and statutory penalties, together with legal interest and court costs, following a hearing on the Harrises' rule for contempt against Union National for failure to pay a settlement. For the following reasons, we affirm in part, vacate in part, find Union National in contempt of court, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

At the heart of this appeal is a dispute over insurance proceeds. In April 2011, a fire destroyed the Harrises' home. The Harrises originally filed suit against Union National, seeking payment of the policy limits, penalties, and attorney fees. They later amended the suit to include the companies owning a mortgage interest on the home.[1]

Union National answered the suit, generally denying the allegations therein. Thereafter, Union National moved for summary judgment on the basis that Union National had timely paid out the proceeds of the insurance policy in accordance with the terms of the policy. Union National argued that it had fulfilled its obligations under the policy by tendering a check for the full policy limits jointly to the Harrises and the mortgagee of the property, but that the check had never been negotiated. Following a May 12, 2014 hearing on Union National's motion, the district court rendered judgment on June 10, 2014, granting Union National's summary judgment motion and dismissing Union National, with prejudice. The

---

[1] These companies, the Bank of New York Mellon Successor to J P Morgan Chase Bank, as Trustee for the Registered Holder of Novastar Mortgage Funding Trust Series 2003-3 Novastar Home Equity Loan Asset-Backed Certificates, Series 2003-3 and Ocwen Loan Services, LLC, have since been dismissed, with prejudice, from this matter and are not parties to the instant appeal.

judgment further provided that Union National would deposit $40,000.00 into the registry of the court.[2]

In March 2017, the Harrises filed a Rule for Contempt for Failure to Pay Settlement, alleging that Union National was liable to them for not only damages, but also penalties, attorney fees, and costs for Union National's breach of the imposed duty of good faith and fair dealing pursuant to La. R.S. 22:1973(B)(2) and (C), because Union National failed to pay the previously agreed to settlement within thirty days after the agreement was reduced to writing.[3] In said rule, the Harrises allege that Union National had agreed to settle its portion of this matter in June 2014 by depositing $40,000.00 into the registry of the court and that "a written judgment was filed into the record memorializing the settlement agreement." According to the Harrises, prior to filing the rule for contempt, they

---

[2] We note that the Honorable Wayne Ray Chutz was the presiding judge at the May 12, 2014 hearing and the judge who signed the June 10, 2014 judgment.

[3] Louisiana Revised Statutes 22:1973 provides, in pertinent part, as follows:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

. . . .

(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

. . . .

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

sent a demand letter to Union National on March 29, 2017, to no avail, offering to accept $40,000.00 plus interest to resolve the dispute.

In response, Union National filed an exception raising the objection of no cause of action, arguing that it was no longer a party to the case as it was dismissed from the case, with prejudice. Moreover, Union National argued that it had no obligation to place the funds in the court's registry, but it did so to gain dismissal from the case while in its infancy. Union National further noted that although it sent the $40,000.00 check to the clerk of court, it was apparently never deposited because the check became stale. However, Union National maintained that upon learning this information, a new check was deposited into the registry of the court. Union National also argued that there was no settlement between the parties as argued by the Harrises, but rather simply an order by the court that Union National deposit the funds into the registry of the court. Thus, Union National asserted La. R.S. 22:1973(B) had no application to this case.[4]

The Harrises' rule proceeded to hearing on July 17, 2017, at which time the district court heard arguments from counsel and testimony from a representative of the Livingston Parish Clerk of Court's office. The district court took the matter under advisement. Thereafter, on November 3, 2017, the district court issued written reasons for judgment, finding in favor of the Harrises. A judgment submitted by counsel for the Harrises was signed by the district court on November 17, 2017, but said judgment did not contain the appropriate decretal language, nor did it accurately reflect the damages awarded. Accordingly, Union National filed a motion for new trial, which was subsequently granted. The district court entered a new judgment on November 27, 2018, as follows:

---

[4] Although not included in the judgment on appeal and not an issue before us on review, we note that the district court denied Union National's exception raising the objection of no cause of action after argument by counsel.

4

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Plaintiffs have judgment against Defendant Union National Fire Insurance Company in the amount of $15,000.00 as general damages; special damages for loss of judicial interest in the amount of $4,545.75, plus legal interest from April 6, 2017. Attorney's fees for the Rule for Contempt/Motion to Enforce Settlement in the amount of $5,000.00, and statutory penalties in the amount of $39,091.50, together with legal interest from the date of filing this Judgment, in addition to the funds previously deposited into the Registry of the Court, together with all costs of these proceedings.

Union National has no objection to Plaintiffs removing the funds deposited in the registry of the Court.

This judgment resolves all matters between the parties and, therefore, is the final judgment in the case under La CCP articles 1911, 1918 and 2083.

It is from this judgment that Union National has appealed, assigning the following specifications of error for our review:

1. The [district] court lacked jurisdiction to render a judgment against Union National after it was dismissed with prejudice by the June 2014 judgment.

2. The [district] court erred by finding the June 2014 judgment was a settlement agreement for purposes of [La. R.S. 22:1973].

3. The [district] court erred by awarding an excessively high amount of damages and doubled those damages as penalties even though the Plaintiffs failed to present any evidence of damages sustained as a result of an alleged failure to deposit funds in the registry of the court.

4. The [district] court erred by awarding attorneys' fees when they were not authorized by statute.

## LAW AND ANALYSIS

### Jurisdiction (Assignment of Error No. 1)

In its first assignment of error, Union National argues the district court lacked jurisdiction to render judgment against it because the June 10, 2014 judgment dismissed Union National with prejudice. Union National asserts that once it was dismissed with prejudice, it was no longer a party to the suit and the district court no longer had any authority or power to act and render judgment against it. We find no merit to this argument.

5

Regardless of what transpired at the May 12, 2014 hearing on Union National's motion for summary judgment, it is clear that the district court retained jurisdiction over Union National, *i.e.*, at the July 17, 2017 hearing, the district court had before it either a final judgment of the court, which could give rise to a motion for contempt of court, or a valid settlement, which could give rise to certain penalties as set forth in La. R.S. 22:1973. Either way, the district court's jurisdiction is not in question based on the facts and circumstances of this case.

*Applicability of La. R.S. 22:1973 (Assignments of Error Nos. 2, 3, and 4)*

The remainder of Union National's argument on appeal focuses on whether La. R.S. 22:1973 is applicable to the June 10, 2014 judgment. Union National argues there is no precedent for finding that an unambiguous, final judgment, granting summary judgment could be considered a settlement agreement for purposes of La. R.S. 22:1973. Union National maintains that because the June 10, 2014 judgment was not a settlement agreement, it could not have violated the provisions of La. R.S. 22:1973, thus requiring reversal of the district court's judgment. In response, the Harrises allege that the settlement agreement that was reached between the parties on May 12, 2014, was reduced to writing in the form of a judgment prepared by Union National's counsel, and thus, the maximum penalties allowed by La. R.S. 22:1973 should be awarded in this case.[5]

As set forth in La. R.S. 22:1973, certain obligations of good faith and fair dealings are imposed on an insurer, including the obligation to "pay a settlement within thirty days after an agreement is reduced to writing." La. R.S. 22:1973(B)(2). If an insurer breaches this obligation, the insurer "shall be liable

---

[5] In their appellee brief, the Harrises challenge the award of penalties, urging that the district court erred "in not awarding the maximum penalty allowed" by La. R.S. 22:1973 and requesting an increase in penalties to $80,000.00, plus legal interest and attorney fees. However, a party who has not appealed or answered the appeal may not seek to have a judgment modified in its favor. See La. Code Civ. P. art. 2133(A); **Pinn v. Pennison**, 2016-0614 (La. App. 1 Cir. 12/22/18), 209 So.3d 844, 847 n.1. Accordingly, we will not consider any alleged error raised by the Harrises in brief.

for any damages sustained as a result of the breach." La. R.S. 22:1973(A). "In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La. R.S. 22:1973(C). These penalty provisions are penal in nature and must be strictly construed. **Lind v. United Services Automobile Association**, 2017-0217 (La. App. 1 Cir. 1/30/18), 242 So.3d 576, 585. Thus, we are bound to apply "a strict interpretation of the plain language of the penalty provisions" of La. R.S. 22:1973. **Katie Realty, Ltd. v. Louisiana Citizens Prop. Ins. Corp.**, 2012-0588 (La. 10/16/12), 100 So.3d 324, 328.

In reviewing the district court's interpretation and findings regarding a compromise agreement, we apply the manifest error/clearly wrong standard of review. **Morris, Lee and Bayle, LLC v. Macquet**, 2014-1080 (La. App. 4 Cir. 3/23/16), 192 So.3d 198, 208. A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. Civ. Code art. 3071. An enforceable compromise agreement has two essential elements: (1) mutual intention of preventing or putting an end to the litigation and (2) reciprocal concessions of the parties to adjust their differences. **Trahan v. Coca Cola Bottling Co. United, Inc.**, 2004-0100 (La. 3/2/05), 894 So.2d 1096, 1104. A valid and enforceable settlement may also be a compromise if it is reduced to writing. Louisiana courts have held that "settlement" must be equated with compromise in connection with the rules governing compromise. See La. Civ. Code art. 3071, 2007 Revision Comment (c).

A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the

proceedings. La. Civ. Code art. 3072. A compromise, as any other contract, may be contained in two writings rather than one. **Sims v. USAgencies Cas. Ins. Co.,** 2010-1120 (La. App. 1 Cir. 12/22/10), 68 So.3d 570, 574, writ denied, 2011-1927 (La. 11/14/11), 75 So.3d 943. The purpose of the writing requirement is to serve as proof of the agreement and the acquiescence therein. **Sullivan v. Sullivan,** 95-2122 (La. 4/8/96), 671 So.2d 315, 317; **Sims,** 68 So.3d at 574. The requirement that the compromise be in writing or recited in open court and susceptible of being transcribed from the record "aims at avoiding litigation over what the terms of the settlement are." **Feingerts v. State Farm Mut. Auto. Ins. Co.,** 2012-1598 (La. App. 4 Cir. 6/26/13), 117 So.3d 1294, 1301, writ denied, 2013-2156 (La. 11/23/13), 126 So.3d 489) (quoting **Tucker v. Atterburg,** 409 So.2d 320, 322 (La. App. 4 Cir.1981)). Further, the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties. **Brasseaux v. Allstate Ins. Co.,** 97-0526 (La. App. 1 Cir. 4/8/98), 710 So.2d 826, 829.

The compromise instrument is then governed by the same general rules of construction applicable to contracts. **Trahan,** 894 So.2d at 1106; see La. Civ. Code art. 2045 *et seq.* A compromise is valid only if there is a meeting of minds between the parties as to exactly what they intended at the time the compromise was reached. **Shell Oil Co. v. Jackson,** 94-1267 (La. App. 1 Cir. 5/5/95), 655 So.2d 482, 486. Like other contracts, a compromise agreement is the law between the parties, and must be interpreted according to the parties' true intent. The party who attempts to rely on the existence of a compromise agreement bears the burden of proving the requirements for a valid compromise, including the parties' intent to settle. **Suire v. Lafayette City-Parish Consol. Government,** 2004-1459 (La. 4/12/05), 907 So.2d 37, 55; **Succession of Bourg,** 2016-1347 (La. App. 1 Cir. 9/21/17), 231 So.3d 673, 677.

8

Because a compromise is a contract, the basic requirement of consent to contract must be present. **Diversified Marine Services, Inc. v. Jewel Marine, Inc.**, 2016-0617 (La. App. 1 Cir. 6/2/17), 222 So.3d 1008, 1012. Consent of the parties to enter into a contract is established through offer and acceptance. See La. Civ. Code art. 1927. Thus, before a district court can find the existence of a valid written compromise agreement, it must find an offer and an acceptance. **Aloisio v. Christina**, 2013-0676 (La. App. 1 Cir. 2/3/14), 146 So. 3d 564, 566.

Ultimately, the decision before the district court, and this court, is whether an enforceable settlement agreement existed between the Harrises and Union National. The Harrises bore the burden of proving not only the requirements of a valid compromise under Articles 3071 and 3072, but also presenting evidence sufficient to demonstrate that both they and Union National intended to settle the dispute. **Suire**, 907 So.2d at 55. According to the record, the only evidence properly before the district court regarding the alleged settlement between the parties was the June 10, 2014 judgment.[6] After a careful review of the facts of this case, applicable law, and jurisprudence, we find the June 10, 2014 judgment insufficient to constitute a valid contractual settlement of claim between the Harrises and Union National.

The judgment, which was submitted by counsel for Union National, was signed only by Judge Chutz, the presiding judge, and counsel for Union National.

---

[6] The Harrises cut and pasted portions of the May 12, 2014 transcript (pages 10 and 11) into a memorandum to the district court, arguing that the excerpted discussion from the transcript between the district court judge and counsel for the parties made it clear that there was a settlement between the parties. However, arguments and pleadings, including allegations made in memoranda, are not evidence. **In re Melancon**, 2005-1702 (La. 7/10/06), 935 So.2d 661, 666. Nonetheless, we note that the district court judge makes specific reference to these pages in its written reasons for judgment and, in its appeal brief, Union National cites to these same excerpted pages of the May 12, 2014 transcript as support for its argument that the June 10, 2014 judgment is not a settlement agreement, but rather an unambiguous final judgment, granting summary judgment in its favor. On appeal, neither Union National nor the Harrises dispute the accuracy of the excerpted language from the May 12, 2014 transcript. Thus, as it is clear from the record that the district court judge considered, at the very least, pages 10 and 11 of the May 12, 2014 transcript in its ruling, we have also reviewed the excerpted pages as they appear in the record and find that this evidence has no effect on our ultimate decision herein.

9

Neither the Harrises nor their counsel signed the judgment following the May 12, 2014 hearing. Until the parties sign a written document or documents evincing their consent to the terms of a proposed settlement agreement, a party is free to change his or her mind. **Sullivan**, 671 So.2d at 318; **Doiron v. Louisiana Farm Bureau Mut. Ins. Co.**, 98-2818 (La. App. 1 Cir. 2/18/00), 753 So.2d 357, 362. There is simply nothing in the record before us evidencing any intent of the parties to settle this matter. Thus, the district court committed legal error by applying La. R.S. 22:1973 to the June 10, 2014 judgment.

Having found legal error, we must conduct a *de novo* review of the entire record on appeal. As the Louisiana Supreme Court stated:

> [W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*.

**Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 735 (citations omitted).

Contempt of court is defined in La. Code Civ. P. art. 221 as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." There are two types of contempt. A direct contempt includes one committed in the immediate view and presence of the court and of which it has personal knowledge. La. Code Civ. P. art. 222. A constructive contempt of court is any contempt other than a direct one, including willful disobedience of any lawful judgment, order, mandate, writ, or process of the court. La. Code Civ. P. art. 224(2). The punishment a court

10

may impose upon a person adjudged guilty of contempt of court is provided in La. R.S. 13:4611. La. C.C.P. art. 227.

According to La. R.S. 13:4611, a court may punish constructive contempt for failure to obey a court's order by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both. See La. R.S. 13:4611(1)(d)(i). Moreover, a contempt proceeding is designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Thus, any fine assessed must be payable to the court, since the assessment itself is to vindicate the dignity of the court. **Boudreaux v. Vankerkhove**, 2007-2555 (La. App. 1 Cir. 8/11/08), 993 So.2d 725, 734-735. Under La. R.S. 13:4611(1)(g), "[t]he court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section." **Camalo v. Estrada**, 2017-1184 (La. App. 3 Cir. 9/26/18), 257 So.3d 202, 205.

Pursuant to the June 10, 2014 judgment, Union National was to deposit $40,000.00 into the registry of the court. According to the testimony of Ann Wimberly of the Livingston Parish Clerk of Court's office, there was no record of a check from Union National in this case until April 2017. Furthermore, Union National provided no evidence that it had forwarded a check to the clerk of court in accordance with the June 10, 2014 judgment. Thus, it is clear from a review of the record that Union National was in constructive contempt of court when it failed to comply with the order to deposit the funds into the registry of the court, but rather only deposited the funds after receiving the March 29, 2017 demand letter from the Harrises.

Accordingly, pursuant to the limitations of La. R.S. 13:4611, we hereby assess a $500.00 fine against Union National for its constructive contempt of court. We order the district court to impose the $500.00 fine against Union National. **In re Marriage of Blanch**, 2010-1686 (La. App. 4 Cir. 9/28/11), 76 So.3d 557, 565,

11

writs denied, 2011-2366, 2011-2388 (La. 11/18/11), 75 So.3d 460; see also La. Code Civ. P. art. 2164 (providing that an appellate court "shall render any judgment which is just, legal, and proper upon the record on appeal"). Moreover, based on La. R.S. 13:4611(1)(g), we affirm that portion of the district court's November 27, 2018 judgment that awarded the Harrises $5,000.00 in attorney fees.

## DECREE

For the above and foregoing reasons, we affirm that portion of the district court's November 27, 2018 judgment that awarded the Harrises $5,000.00 in attorney fees. In all other respects, we vacate the district court's judgment. We find Union National was in constructive contempt of court for its failure to comply with the June 10, 2014 order of the district court to deposit $40,000.00 into the registry of the court and assess a $500.00 fine against Union National for said contempt. We further remand the matter to the district court with instructions to impose the $500.00 fine against Union National. All costs associated with this appeal are assessed equally between the parties.

**NOVEMBER 27, 2018 JUDGMENT AFFIRMED IN PART AND VACATED IN PART; CONTEMPT JUDGMENT RENDERED; REMANDED WITH INSTRUCTIONS.**